# EXHIBIT A

Public Documents

LUCAS COUNTY COURT OF COMMON PLEAS
J. BERNIE QUILTER, CLERK
700 ADAMS STREET
TOLEDO, OHIO

TIME: 10:00:22 AM
DATE: 12/18/2023

Select Language
Powered by Google Translate

CASE:    G-4801  -CI  -0202304291-000
TITLE:    KING VS STATE FARM FIRE ETAL
JUDGE:  LINDSAY D NAVARRE                                                      STATUS:  ACTIVE/PENDING
FILING DATE:    11/9/2023                          CASE TYPE:  CI          CIVIL

---

MONETARY AMOUNT:                                          DOCKET/PAGE:
ORIGINAL COURT:                                                   TAX TYPE:
PREVIOUS CASE NUMBER:                      STATE OF OHIO NUMBER:

---

| | Party | Counsel |
|---|---|---|
| PLAINTIFF 1: | KING ROBERT<br>3456 E MANHATTAN BLVD<br>TOLEDO, OH  43611 | MICHAEL D PORTNOY<br>4198742775<br>7024 CLOISTER ROAD<br>TOLEDO, OH  43617 |
| DEFENDANT 1: | STATE FARM FIRE AND<br>CASUALTY COMPANY<br>ONE STATE FARM PLAZA<br>BLOOMINGTON, IL  61710 | |
| DEFENDANT 2: | MITCHELL JUDSON<br>CLAIMS SPECIALIST FOR STATE<br>FARM FIRE AND CASUALTY<br>COMPANY<br>ONE STATE FARM PLAZA<br>BLOOMINGTON, IL  61710 | |

---

| DATE | SEQ | EVENT |
|---|---|---|
| 11/9/2023 | 2 | Title : OPN:COMPLAINT FILED<br>COMPLAINT AND CLASS ACTION PURSUANT TO RULE 23 OF THE<br>OHIO RULES WITH JURY DEMAND ENDORSED HEREON<br>**PARTY :** P1 - KING ROBERT |
| 11/13/2023 | 1 | Title : FRM:CIVIL SUMMONS ISSUED<br>Form Number S2-245716<br>Issued by CO (CLERK) (6835) FRM:CIVIL SUMMONS ISSUED<br>**PARTY :** D1 - STATE FARM FIRE AND CASUALTY COMPANY |
| 11/13/2023 | 2 | Title : FRM:CIVIL SUMMONS ISSUED<br>Form Number S2-245717<br>Issued by CO (CLERK) (6835) FRM:CIVIL SUMMONS ISSUED<br>**PARTY :** D2 - MITCHELL JUDSON |
| 11/13/2023 | 3 | Title : SRV:SUMM & COMPLT ISSUED<br>SUMMONS AND COPY OF COMPLAINT SENT CERTIFIED MAIL #<br>STATE FARM FIRE<br>AND CASUALTY COMPANY 9589 0710 5270 0858 6215 53<br>ONE STATE FARM PLAZA<br>BLOOMINGTON, IL 61710<br>JUDSON MITCHELL 9589 0710 5270 0858 6215 60<br>CLAIMS SPECIALIST FOR<br>STATE FARM FIRE<br>AND CASUALTY COMPANY<br>ONE STATE FARM PLAZA<br>BLOOMINGTON, IL 61710 |

**PARTY :** P1 - KING ROBERT

| 11/27/2023 | 1 | Title : RTN:CERTIFIED MAIL |
|---|---|---|

RETURN RECEIPT CERTIFIED MAIL # 9589 0710 5270 0858 6215 60
SIGNED: BRION GREGO
DATE: 11-17-2023
JUDSON MITCHELL
ONE STATE FARM PLAZA
**PARTY :** D2 - MITCHELL JUDSON

| 12/4/2023 | 1 | Title : RTN:CERTIFIED MAIL |
|---|---|---|

RETURN RECEIPT CERTIFIED MAIL # 9589 0710 5270 0858 6215 53
SIGNED: BRIAN GREGORY
DATE: 11-17-2023
STATE FARM FIRE AND CASUALTY COMPANY
ONE STATE FARM PLAZA
**PARTY :** D1 - STATE FARM FIRE AND CASUALTY COMPANY

| 12/12/2023 | 1 | Title : PLD:AMENDED COMPLAINT |
|---|---|---|

AND CLASS ACTION PURSUANT TO RULE 23 OF THE OHIO RULES WITH
JURY DEMAND ENDORSED HEREON
**PARTY :** P1 - KING ROBERT

Disclaimer : The public record information available here reflects the docket entries and journals required by Ohio law to be kept by the Lucas County Clerk of the Court of Common Pleas. This information reflects the actual documents filed and kept at the Clerk of Courts Legal Division, located in the Lucas County Courthouse, at Adams and Erie Streets in Toledo, Ohio, 43624. The data entry, though generally deemed reliable, cannot be guaranteed. The information may appear on the Internet Docket before the entry is actually signed and journalized. Of course the proposed action is official only when signed and journalized. In no event shall the Lucas County Clerk of the Court of Common Pleas, or any other Lucas County department, agency, or official be held liable for damage of any nature, direct or indirect, arising from the use of this Internet product; including loss of profits, loss of savings, or other incidental or consequential damages.

# LUCAS COUNTY COMMON PLEAS COURT
### CORNER ADAMS & ERIE STREETS
### TOLEDO, OHIO 43604
## SUMMONS
## CIVIL ACTION
**FILING TYPE:** **OTHER CIVIL**

JUDSON MITCHELL
CLAIMS SPECIALIST FOR
STATE FARM FIRE AND CASUALTY COMPANY
ONE STATE FARM PLAZA
BLOOMINGTON, IL 61710

G-4801-CI-0202304291-000
JUDGE:  LINDSAY D NAVARRE

     You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

     You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint  is attached to this Summons.

     You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service  or  to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

     If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

PLAINTIFF (S)

ROBERT KING
3456 E MANHATTAN BLVD
TOLEDO, OH 43611

ATTORNEY FOR PLAINTIFF(S)

MICHAEL D PORTNOY
7024 CLOISTER ROAD
TOLEDO, OH 43617

BERNIE QUILTER
CLERK OF COURTS

Date:  November 13, 2023

_J. Bernie Quilter_____ , Clerk



# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
### (mark <u>one</u> & respond)

☐ I request to be notified by <u>email</u>

My email address _____

**Send email to:** Lwatt@co.lucas.oh.us
Subject:      G-4801-CI-0202304291-000
              JUDSON MITCHELL
Message:      Your email address

**OR**

☐ I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address _____
_____
_____

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

## If you do NOT hire an attorney & fail to respond
## you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

# LUCAS COUNTY COMMON PLEAS COURT
## CORNER ADAMS & ERIE STREETS
### TOLEDO, OHIO 43604
# SUMMONS
# CIVIL ACTION

**FILING TYPE:**                                **OTHER CIVIL**

JUDSON MITCHELL                           G-4801-CI-0202304291-000
CLAIMS SPECIALIST FOR                     JUDGE:  LINDSAY D NAVARRE
STATE FARM FIRE AND CASUALTY COMPANY
ONE STATE FARM PLAZA
BLOOMINGTON, IL 61710

You have the right to seek legal counsel.  If you cannot afford a lawyer, you may contact the Legal Services of Northwest Ohio.  If you do not qualify for services by the Legal Services of Northwest Ohio and do not know an attorney you may contact the Toledo Bar Association's Lawyer Referral Service (419) 242-2000.

You have been named as a defendant in a Complaint filed in this Court by the plaintiff named below.  A copy of the Complaint is attached to this Summons.

You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint, within twenty-eight (28) days after you receive this Summons, exclusive of the of the day of service  or  to an amended complaint within the remaining response time to the complaint or 14 days, whichever period may be longer.  Your answer must be filed with the Clerk of Court of Common Pleas within three (3) days after the service of a copy of the Answer on the plaintiff's attorney.

If you fail to serve and file your Answer, judgment by default will be rendered against you for the relief demanded in the Complaint.

PLAINTIFF (S)                              ATTORNEY FOR PLAINTIFF(S)
ROBERT KING                               MICHAEL D PORTNOY
3456 E MANHATTAN BLVD                      7024 CLOISTER ROAD
TOLEDO, OH 43611                           TOLEDO, OH 43617

                                          BERNIE QUILTER
                                          CLERK OF COURTS

Date:  November 13, 2023

                                          _J. Bernie Quilter_____ , Clerk

G-4801-CI-0202304291-000   JUDSON MITCHELL  Generated:  November 13, 2023



# IF YOU DO <u>NOT</u> HIRE AN ATTORNEY
## PLEASE READ & RESPOND
### (mark <u>one</u> & respond)

☐ I request to be notified by <u>email</u>

My email address _____

**Send email to:** Lwatt@co.lucas.oh.us
Subject:      G-4801-CI-0202304291-000
                 JUDSON MITCHELL
Message:     Your email address

**OR**

☐ I request to be notified by <u>regular mail</u>
*(Clerk will forward to Court for approval)*

My mailing address    _____
                             _____
                             _____

**Return this Form with your address to:**
Clerk of Court
Lucas County Common Pleas Court
700 Adams
Toledo, OH  43604

---

## If you do NOT hire an attorney & fail to respond
## you will NOT receive notification of events related to this case

Case Information is available Online at:
www.co.lucas.oh.us/Clerk
click on the "Dockets Online" link

*Local Rule 5.05 H. SERVICE BY CLERK'S OFFICE Once journalized, the Clerk of courts Office will transmit the entries to the email address submitted by the parties. Counsel for a party or Pro Se litigant representing themselves who do not have an email address may, by motion, request ordinary mail service of entries by the Clerk of Courts Office.*

## LUCAS COUNTY COMMON PLEAS COURT
## CASE DESIGNATION

TO:  **Bernie Quilter, Clerk of Courts**

**CASE NO.**_____

**JUDGE**_____

**G-4801-CI-0202304291-000**
**Judge**
**LINDSAY D. NAVARRE**

The following type of case is being filed:

**Professional Malpractice**
- [ ] Legal Malpractice (L)
- [ ] Medical Malpractice (M)
- [ ] **Product Liability (B)**
- [ ] **Other Tort (C)**

**Workers' Compensation**
- [ ] State Funded (D)
- [ ] Self Insured (K)

- [ ] **Administrative Appeal (F)**

- [ ] **Commercial Docket**

By submitting the complaint, with the signature of the Attorney, the Attorney affirms that the name of person with settlement authority and his/her direct phone number will be provided upon request to a party or counsel in this matter

**Other Civil**
- [ ] Consumer Fraud (N)
- [ ] Forfeiture
- [ ] Appropriation (P)
- [ ] Court Ordered
- [x] Other Civil (H)
- [ ] Certificate of Title
- [ ] Copyright Infringement (W)

This case was previously dismissed pursuant to CIVIL RULE 41 and is to be assigned to Judge ____n/a____, the original Judge at the time of dismissal. The previously filed case number was CI_____.

This case is a civil forfeiture case related to a criminal case currently pending on the docket of Judge ____n/a____. The pending case number is_____.

This case is a Declaratory Judgment case with a personal injury or related case currently pending. The pending case number is____n/a____, assigned to Judge _____

This case is to be reviewed for consolidation in accordance with Local Rule 5.02 as a companion or related case. This designation sheet will be sent by the Clerk of Courts to the newly assigned Judge for review with the Judge who has the companion or related case with the lowest case number. The Judge who would receive the consolidated case may accept or deny consolidation of the case. Both Judges will sign this designation sheet to indicate the action taken. If the Judge with the lowest case number agrees to accept, the reassignment of the case by the Administration Judge shall be processed. If there is a disagreement between the Judges regarding consolidation, the matter may be referred to the Administrative Judge.

Related/companion case number_____ Assigned Judge_____

| Approve/Deny | Date | Approve/Deny | Date |

**Attorney**    MICHAEL POSTKOF
**Address**    7026 CORSTER Rd
          TOLEDO, OHIO 43617
**Telephone**    (419) 874-2775



FILED
LUCAS COUNTY
2023 NOV -9 PM 2: 24
COMMON PLEAS COURT
CLERK OF COURTS
COURT

## IN THE LUCAS COUNTY COURT OF COMMON PLEAS

Robert King
3456 E. Manhattan Blvd.
Toledo, Ohio 43611
Plaintiff and on behalf of those similarly
situated,

Vs.

State Farm Fire and Casualty Company
One State Farm Plaza
Bloomington, Ill. 61710

and

Judson Mitchell, claims specialist for State
Farm Fire and Casualty Company
One State Farm Plaza
Bloomington, Ill. 61710

Defendants.

Case No.

JUDGE

G-4801-CI-0202304291-000
Judge
**LINDSAY D. NAVARRE**

**COMPLAINT AND CLASS ACTION
PURSUANT TO RULE 23 OF THE OHIO
RULES WITH JURY DEMAND
ENDORSED HEREON**

Michael D. Portnoy (0040213)
7024 Cloister Rd.
Toledo, Ohio 43617
PH: (419) 874-2775
FX: (419) 874-2777
e-mail:hawkport@aol.com
Attorney Robert King

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW COMES Robert King, both individually and on behalf of the purported

class, by and through counsel, and for their causes of action against the Defendants,

hereby state the following:

1.  At all relevant times, Robert King (hereinafter King) was a resident of

Lucas County, Ohio and was the owner of the house on 3456 Manhattan Blvd., Toledo,

Ohio 43611.(hereinafter house) on January 14, 2023. The other purported plaintiffs

reside in Lucas County, Ohio and throughout the United States.

2.  This action is brought by King as a class action on his own behalf

1

Lucas County, Ohio and was the owner of the house on 3456 Manhattan Blvd., Toledo, Ohio 43611.(hereinafter house) on January 14, 2023. The other purported plaintiffs reside in Lucas County, Ohio and throughout the United States.

2. This action is brought by King as a class action on his own behalf and on behalf of others similarly situated under the provisions of Rule 23 of the Ohio Rules of Civil Procedure for damages, declaratory relief, attorney's fees and costs.

3. The class represented by King in this action and of which they are members, consists of all those individuals who have and had property insurance contracts with Defendant State Farm Fire and Casualty Company (herinafter State Farm) and whose insurance claims were adjusted in part by Judson Mitchell (hereinafter Mitchell)  and were illegally denied insurance payments under their respective property insurance contracts with State Farm.

4. The exact number of the members of the class as described above is not known but is estimated that there are no less than 250 members of the class and the class is so numerous that individual members pursuing their action is impractical.

5. There are common questions of law and fact in this action that relate and effect the rights of each member of the class and the relief sought is common to the entire class namely whether the Defendants illegally breached the relevant property insurance contracts with King and the purported Plaintiffs.

6. The facts in this case will unequivocally establish the Defendants illegally violated the relevant property insurance contracts with King and purported Plaintiffs.

7. The claims of King who is a representative of this class are typical of the claims of the class and the claims of the members of the class including King, depend on the showing of the act or acts of the Defendants given rise to the right of the

2

Plaintiffs to the relief being sought.  There is no conflict as between King and any other member of the class in respect to the sanction or with respect to the claims for relief set forth in this Complaint.

8. This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class identified above would create a risk of inconsistent or varying adjudications respecting individual members of the class and establishing compatible standards of conduct for the Defendants and those grounds generally apply to the class verified above, making a final injunctive relief or course finding declaratory relief appropriate with respect to the class as a whole and the questions of law and fact, the members of the class identified above will dominate over any questions effecting only individual members and King.

9. King is a representatives for the class and are able to and will fairly and adequately protect the interest of the class.  The attorney for the class is experienced in the areas of pursuing class actions and will actively be responsible for Plaintiffs' case.

## COUNT ONE

10. King incorporates paragraphs one (1) through nine (9) as if fully written herein.

11. King and other class members similarly situated, entered into property insurance contracts with State Farm, an insurance company licensed to sell insurance contracts in Ohio and the United States, who provided property insurance company from 2022 through 2023 to King and purported plaintiffs. King had property insurance

13. As a result of this accident, King contacted State Farm to make a property damage claim pursuant to his property insurance policy. State Farm conducted an investigation of property damage and concluded that the property damage claim to the house was $104,711.87.

14. Contrary to the plain language of the relevant contract between King and State Farm, State Farm failed to pay the allowable amount of the property damage payment to King. State Farm willfully breached the relevant contract with Plaintiff by refusing to pay him cost of living expenses, compensation for individual personal property damage and disregarded the actual costs for repairs to the house when calculating the damages.

15. As a result of the Defendants' willful and illegal breach of contract against King and the other similarly purported Plaintiffs who were illegally denied insurance payments per the relevant property insurance contracts with State Farm and Mitchell, King and the purported Plaintiffs have suffered damages in an amount exceeding $25,000.00

## COUNT TWO

16. King incorporates paragraphs one (1) through fifteen (15) as if fully rewritten herein.

17. Pursuant to R.C. 2923.32(A)(1), the Ohio civil RICO statute, "No person employed by, or associated with enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a *pattern of corrupt activity* or the collection of an unlawful debt." (Emphasis added.) The term "enterprise" is statutorily defined as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization,

4

employed by, or associated with enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a *pattern of corrupt activity* or the collection of an unlawful debt." (Emphasis added.) The term "enterprise" is statutorily defined as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of person associated in fact although not a legal entity." R.C. 2923.31 (C).

18. A "pattern of corrupt activity" consists of "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). The term "corrupt activity" is statutorily defined as "racketeering activity" under the Organized crime Control Act of 1970, 84 Stat. 941, Section 1961(A)(B), (1)(D), and (1) (E), as amended, Title 18, U.S. Code. It also includes "conduct" that constitutes violation of specifically enumerated crimes. R.C. 2923.31(I) (2).

19. Ohio courts have held that in order to establish liability under R.C. 2923.32, a plaintiff must show "(1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." ***Patton v. Wilson,*** 8th Dist. No. 82079, 2003-Ohio-3379, at ¶ 12, citing ***Kondrat v. Morris*** (1997), 118 Ohio App.3d 198, 209, 692 N.E.2d 246. The elements must be pleaded with specificity, and sufficient evidence must be presented to overcome a motion for summary judgment. Id. at 209, 692 N.E.2d 246.

20. Ohio Revised Code Section 2913.02 states the following:

(A)  No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

> (1)  Without the consent of the owner or person authorized to give consent;
>
> (2)  Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3)  By deception;
>
> (4)  By threat;
>
> (5)  By intimidation;

21. 18 U.S.C. Sections 1961-1968, of the Federal Racketeering Influence and Corrupt Organization Act (RICO) is directed at "racketeering activity" defined in Section 1961 (1) to encompass, inter alia, acts "indictable" under specific federal criminal provisions, including mail fraud, provides in Section 1964 (c) for a private civil action to recover treble damages by any person injured in his/her business or property "by reason of a violation of section 1962." Section 1962(B)'s definition of "racketeering activity" includes (B) any act which is indictable under any of the following provisions for Title 18, United States Code, including section 1341 (18 U.S.C.S. Section 1341) relating to mail fraud.

22. Pursuant to **Sedema, S.P.R.L. v. Imrex Co. Inc., et al.,** 473 U.S. 479, (1985), 18. U.S.C.S. Sections 1961-1968 do not require that its occurrence must be established by criminal standards or that the consequences of a finding of liability in a private civil action are identical to the consequences of a criminal connection. **Sedima** also held that

18 U.S.C.S. Sections 1961-1968 impose no distinct "racketeering injury" requirement or civil liability to attach.

23. By using the mail to send notices to King and the Plaintiffs that Defendants would pay insurance payments to King and the purported Plaintiffs pursuant to the terms and conditions of the relevant property insurance contracts, when these payments were not paid to King and the purported Plaintiffs per the relevant contracts, in violation of Federal and State law, Defendants made material misrepresentations concerning the relevant property insurance contracts.

24. Defendants violated Ohio Revised Code Sections 2923.32(A)(1), 2923.31(C), (E), and (I)(2) and 18 U.S.C.S. Sections 1961-1968 by using the mail system to send notices to King and the Plaintiffs, alleging Defendants paid property insurance payments pursuant to the terms of the relevant property insurance contracts when these statements were false.

25. Defendants engaged in this fraudulent enterprise through a pattern of racketeering activity by scheming to convince King and each Plaintiff that insurance payments were made pursuant to the relevant terms of the property insurance contracts when that was false. Defendant financially benefited from this pattern of fraud to King and each Plaintiff's financial detriment causing damages in an amount exceeding $25,000.00.

### COUNT THREE

26. King, individually and as a class action representative, incorporates paragraph one (1) through twenty-five (25) as if fully rewritten herein.

27. King and each Plaintiff are consumers as defined by Ohio Revised Code Section 1345.01.

7

28.  Ohio Revised Code Section 1345.02 (A) states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."

29.  As a result of the Defendants' material misrepresentations to the King and the other similarly situated Plaintiffs concerning the relevant property insurance contracts, Defendants violated Ohio Revised Code Sections 1345.02 and 1345.03 by acting arbitrarily, capriciously and fraudulently, causing damages to King and the Plaintiffs in an amount exceeding $25,000.00.

## COUNT FOUR

30. King incorporates paragraphs one (1) though twenty-nine (29) as if fully rewritten herein.

31. Defendants were required to act in good faith in processing and handling the property damage claim filed by the Plaintiffs.

32. Because the Defendants failed to exercise good faith in processing the claims of Plaintiffs and because Defendants' refusal to pay the full amount of insurance payments on the Plaintiffs' property damage is not predicated upon circumstances that furnish reasonable justification, pursuant to **Zoppo v. Homestead Insurance Co.,** 71 Ohio St. 3d. 552 (1994), Plaintiffs are entitled to punitive damages against Defendants, based upon the willful, wanton and malicious acts by Defendants to deny paying Plaintiffs' full insurance payments for their legitimate insurance claims.

**WHEREFORE,** King, for himself and for all the members of the class, requests that jury be empaneled to hear all triable issues in this case and respectfully requests this honorable Court for a Judgment against the Defendant as follows:

8

a.  The right of each class member to recover all monies due to them from the Defendant, either individually or jointly and severally, under the Ohio and Federal RICO statutes, the Ohio Consumer Sales Practice Act and for violating Fair Debt Collection Practices Act and **Zoppo v. Homestead Insurance, Co;**

b.  The Plaintiffs class be awarded damages instant to the equitable relief requested in the sum of an amount exceeding $25,000.00;

c.  This Court award the sum exceeding $25,000.00 on behalf of the class for punitive damages, statutory interest, and any other equitable relief this Court deems just based upon the illegal and willful acts by the Defendants; and

d.  Any and all damages this court deems just.

Respectfully submitted,

s/ Michael D. Portnoy
Attorney for Robert King

PLAINTIFF'S
EXHIBIT

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

*Po Box 88049*
*Atlanta GA 30356-9901*

 *StateFarm*

AT1      H-16-2516-FB15  F  H  W
                3201
KING, ROBERT
3456 E MANHATTAN BLVD
TOLEDO OH  43611-1750

# DECLARATIONS

AMENDED MAR 1 2022

| | |
|---|---|
| **AMOUNT DUE:** | **None** |
| **Payment is due by**  BILLED THRU SFPP | |

**Policy Number:**  `Insurance`

**Policy Period:**  12 Months
**Effective Dates:** MAR 1 2022 to MAR 1 2023
The policy period begins and ends at 12:01 am standard time at the residence premises.

## HOMEOWNERS POLICY

**Location of Residence Premises**
3456 E MANHATTAN BLVD
TOLEDO OH  43611-1750

**Your State Farm Agent**
DAVE BLY
2416 W LASKEY RD
TOLEDO OH  43613-3504

**Phone:** (419) 474-9672

| | | | | |
|---|---|---|---|---|
| **Construction:** | Frame | | **Roof Material:** | Composition Shingle |
| **Year Built:** | 1892 | | **Roof Installation Year:** | 2020 |

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-holder written notice in compliance with the policy provisions or as required by law.

### IMPORTANT MESSAGES
Your policy is amended MAR 1 2022
HOME/AUTO DISCOUNT DELETED

### PREMIUM
Endorsement Premium
INCREASE                                                                                     $    658.00
*Your premium has already been adjusted by the following:*
Claim Record

Prepared   MAY 03 2022                                                                   Page  1 of 3
HO 2000

*State Farm*

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| KING, ROBERT | |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 132,400 |
| Other Structures | $ 20,000 |
| B Personal Property | $ 99,300 |
| C Loss of Use | $ 39,720 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 100,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

## INFLATION

Inflation Coverage Index: 322.1

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses   1 % | $ 1,324 |

## LOSS SETTLEMENT PROVISIONS

A2 Replacement Cost - Common Construction
B1 Limited Replacement Cost - Coverage B

MAY 03 2022

HO-3000

35-GH-Q919-1                                                        *StateFarm*

## FORMS, OPTIONS, AND ENDORSEMENTS

| HW-2135    | Homeowners Policy                  |
|------------|------------------------------------|
| HO-2307.1  | Amendatory Endorsement             |
| HO-2444.2  | Back-Up Of Sewer Or Drain -        |
|            | 5% of Coverage A/$ 6,620           |
| Option OL  | Ordinance/Law  10%/$  13,240       |

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaxell*                           *Michael F. Tipson*
Secretary                                   President



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.  However, we want to point out that every policy contains limitations and exclusions.  Please read your policy carefully, especially "Losses Not Insured" and all exclusions.



# State Farm® Homeowners Policy

**Ohio**
HW-2135

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

AGREEMENT ...................................................1

DEFINITIONS ..................................................1

DEDUCTIBLE ..................................................5

SECTION I – PROPERTY COVERAGES ...................5

  COVERAGE A – DWELLING......................5

    Dwelling .................................................5

    Other Structures ....................................5

    Property Not Covered ...........................5

  COVERAGE B – PERSONAL PROPERTY ....5

    Property Covered ..................................5

    Special Limits of Liability ......................6

    Property Not Covered ...........................6

  COVERAGE C – LOSS OF USE..................8

    Additional Living Expense .....................8

    Fair Rental Value...................................8

    Prohibited Use .......................................8

  SECTION I – ADDITIONAL COVERAGES .....8

    Debris Removal......................................8

    Temporary Repairs ...............................9

    Trees, Shrubs, and Landscaping...........9

    Fire Department Service Charge............9

    Property Removed .................................9

    Credit Card, Bank Fund Transfer Card,
    Forgery, and Counterfeit Money............9

    Power Interruption ...............................10

    Refrigerated Products ..........................10

    Arson Reward.......................................10

    Volcanic Action ....................................10

    Collapse ...............................................10

    Locks and Remote Devices..................11

    Fuel Oil Release ...................................11

    Tear Out ...............................................11

    Home Certification ...............................11

INFLATION COVERAGE ...............................11

SECTION I – LOSSES INSURED ..................12

  COVERAGE A – DWELLING....................12

  COVERAGE B – PERSONAL PROPERTY ..12

SECTION I – LOSSES NOT INSURED ..........14

SECTION I – LOSS SETTLEMENT ...............18

  COVERAGE A – DWELLING....................18

    A1 – Replacement Cost Loss Settlement –
    Similar Construction ............................18

    A2 – Replacement Cost Loss Settlement –
    Common Construction .........................18

  COVERAGE B – PERSONAL PROPERTY ...........19

    B1 – Limited Replacement Cost Loss
    Settlement ...........................................19

    B2 – Depreciated Loss Settlement .......19

SECTION I – CONDITIONS...........................20

    Insurable Interest and Limit of Liability .............20

    Your Duties After Loss ........................20

    Loss to a Pair or Set ...........................20

    Appraisal..............................................21

    Other Insurance...................................22

    Suit Against Us .....................................22

    Our Option ...........................................22

    Loss Payment ......................................22

    Abandonment of Property.....................22

    Mortgagee Clause ...............................22

    No Benefit to Bailee .............................23

    Recovered Property..............................23

    Assignment of Claim............................23

SECTION II – LIABILITY COVERAGES ..................23

  COVERAGE L – PERSONAL LIABILITY .............23

  COVERAGE M – MEDICAL PAYMENTS TO
  OTHERS...............................................23

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

**SECTION II – ADDITIONAL COVERAGES**............23

Claim Expenses ................................................23

First Aid Expenses ...........................................24

Damage to Property of Others .........................24

**SECTION II – EXCLUSIONS**................................24

**SECTION II – CONDITIONS** ...............................28

Limit of Liability.................................................28

Severability of Insurance ..................................28

Duties After Loss ..............................................28

Coverage M Requirements ..............................29

Payment of Claim – Coverage M or Damage
to Property of Others ........................................29

Suit Against Us..................................................29

Bankruptcy of an Insured .................................29

Other Insurance – Coverage L ..........................29

**SECTION I AND SECTION II – CONDITIONS**.........29

Policy Period .....................................................29

Concealment or Fraud.......................................29

Liberalization Clause.........................................29

Waiver or Change of Policy Provisions .............29

Cancellation.......................................................29

Nonrenewal .......................................................30

Assignment of Policy .........................................30

Subrogation and Reimbursement.....................30

Death ................................................................31

Conformity to State Law ...................................31

Premium ...........................................................31

Right to Inspect.................................................31

Joint and Individual Interests ...........................32

Change of Policy Address.................................32

Electronic Delivery............................................32

Our Rights Regarding Claim Information..........32

Duties Regarding Claim Information.................32

**OPTIONAL POLICY PROVISIONS**.............................33

Option AI – Additional Insured.........................33

Option BP – Business Property ........................33

Option BU – Business Pursuits ........................33

Option FA – Firearms .......................................33

Option ID – Increased Dwelling Limit ..............34

Option IO – Incidental Business .......................34

Option JF – Jewelry and Furs...........................35

Option OL – Building Ordinance or Law...........35

Option SG – Silverware and Goldware
Theft .................................................................37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

# HOMEOWNERS POLICY
## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true;

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents;

5. any application for the insurance provided by this policy, including any warranty made by *you*, is a part of this policy; and

6. all statements in the application for insurance and in the *Declarations* are warranties.

This policy is void from its inception, if any warranty made by *you* is found to be false.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. (These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary

1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

A *building structure* includes:

a. the foundation supporting the structure, including:

 (1) slabs;

 (2) basement walls;

 (3) crawl space walls;

 (4) footings; and

 (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

4. *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a. volunteer activities for a not-for-profit or nonprofit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age,

including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

e. ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

5. *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

6. *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7. *"dwelling"* means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

8. *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9. *"insured"* means:

a. *you*;

b. *your relatives*; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, *insured* also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by *you* or a person included in 9.b. or 9.c. above. A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 9.b. or 9.c. above.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

10. **"insured location"** means:

a. the **residence premises**;

b. the part of any other premises, other structures, and grounds used by **you** as a residence. This includes premises, structures, and grounds **you** acquire while this policy is in effect for **your** use as a residence;

c. any premises used by **you** in connection with the premises included in 10.a. or 10.b. above.

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f. individual or family cemetery plots or burial vaults owned by an **insured**;

g. any part of a premises occasionally rented to an **insured** for purposes other than **business**;

h. vacant land owned by or rented to an **insured**. For the purposes of this definition, vacant land does not include:

   (1) farm land;

   (2) land containing a residence; or

   (3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures; unless they are used solely for the personal use of the **insured**; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. **"loss insured"** means a loss as described under **SECTION I – LOSSES INSURED, COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

12. **"motor vehicle"**, when used in Section II of this policy, means:

a. a land **motor vehicle** designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an **insured location**. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trail-bike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not **motor vehicles**:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

b. a motorized land vehicle in storage on an **insured location** not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13. **"occurrence"**, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

    a. **bodily injury**; or

    b. **property damage**;

during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

14. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

15. **"relative"** means any person related to **you** by:

    a. blood;

    b. adoption;

    c. marriage; or

    d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with **you**.

16. **"residence employee"** means an employee of an **insured**, or an employee leased to an **insured** by a labor leasing firm under an agreement between an **insured** and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for **you**. This does not include employees while performing duties in connection with the **business** of an **insured**.

17. **"residence premises"** means:

    a. the one, two, three, or four family dwelling, other structures and grounds; or

    b. that part of any other **building structure**;

where **you** reside and which is shown in the **Declarations**.

18. **"State Farm Companies"** means one or more of the following:

    a. State Farm Mutual Automobile Insurance Company;

    b. State Farm Fire and Casualty Company; and

    c. subsidiaries or affiliates of either 18.a. or 18.b. above.

19. **"vacant dwelling"** means:

    a. a dwelling:

        (1) that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

        (2) where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

    A dwelling will be considered occupied only if it is being used as a habitual place of residence with **your** knowledge and approval.

    b. A dwelling that is under active construction will not be considered a **vacant dwelling**. A dwelling is under active construction when it is:

        (1) being built as a new structure;

        (2) being repaired due to damage otherwise covered by this policy; or

        (3) undergoing substantial improvements, renovations, remodeling, or modifications;

    and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20. **"we"**, **"us"**, and **"our"** mean the Company shown in the **Declarations**.

21. **"you"** and **"your"** mean the person or persons shown as "Named Insured" in the **Declarations**. If a "Named Insured" shown in the **Declarations** is a human being, then **you** and **your** include:

    a. a spouse of a "Named Insured";

4

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

b.  a party to a civil union with a "Named Insured";

c.  a domestic partner of a "Named Insured"; or

d.  a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the

*Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1.  **Dwelling. *We*** cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2.  **Other Structures. *We*** cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

    *We* do not cover other structures:

    a.  not permanently attached to or otherwise forming a part of the realty;

    b.  used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone; and consists solely of activities that are:

        (1)  duties of the *insured's* employment by another; and

        (2)  performed solely by the *insured*; or

    c.  rented or held for rental unless:

        (1)  rented to a person who is a tenant of the *dwelling;*

        (2)  rented for use solely as a private garage; or

        (3)  rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3.  **Property Not Covered. *We*** do not cover:

    a.  land, including the land necessary to support any Coverage A property. *We* also do not cover:

        (1)  any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

        (2)  the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

    b.  trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping;** or

    c.  systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1.  **Property Covered.**

    a.  *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

        (1)  owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

        (2)  owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to **you**.

b. **We** cover personal property usually located at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after **you** start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in **your** immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an **insured** while located at a residence away from the **residence premises**.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection; bank notes; bullion; gold other than goldware; silver other than silverware; and platinum;

b. $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a **business**, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

$5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered. We** do not cover:

a. articles separately described and specifically insured in this or any other insurance;

6

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, *we* do cover those vehicles or machines:

   (1) that are:

      (a) not designed for travel on public roads; and

      (b) not subject to motor vehicle registration;

   (2) and that are:

      (a) used primarily to service the *insured location*; or

      (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to *you*;

g. property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

   (1) in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

   (2) on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the *residence premises*;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts, or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

## COVERAGE C – LOSS OF USE

The most **we** will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the **Declarations** for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a **loss insured** causes the **residence premises** to become uninhabitable, **we** will pay the reasonable and necessary increase in cost incurred by an **insured** to maintain their normal standard of living for up to 24 months. **Our** payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for **your** household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   **We** will not pay more than the limit of liability shown in the **Declarations** for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a **loss insured** will be subtracted from any amount owed.

2. **Fair Rental Value.** When a **loss insured** causes that part of the **residence premises** rented to others or held for rental by **you** to become uninhabitable, **we** will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** **We** will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits **your** use of the **residence premises**, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a **loss insured** under this policy if

the damage had occurred to property on the **residence premises**;

   b. the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   **We** will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** **We** will pay the reasonable expenses **you** incur in the removal of debris of covered property damaged by a **loss insured**. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**.

   b. **We** will also pay up to $1,000 total for each loss to cover the reasonable expenses **you** incur in the removal of tree debris and stumps from the **residence premises**, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a **loss insured** to Coverage A property; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

(a) the driveway, on the **residence premises**, and prevents land **motor vehicle** access to or from the **dwelling**; or

(b) a ramp designed to assist persons with disabilities, on the **residence premises**, and prevents access to or from a **building structure**.

2. **Temporary Repairs.** If damage is caused by a **loss insured**, **we** will pay the reasonable and necessary cost **you** incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping. We** will pay for accidental direct physical loss to outdoor:

a. trees, shrubs, live or artificial plants, and lawns;

b. artificial grass; and

c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the **residence premises**, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** (not-owned or operated by a resident of the **residence premises**), **Vandalism or malicious mischief,** or **Theft.**

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the **Declarations** for **COVERAGE A – DWELLING. We** will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. **We** will not pay for any loss to property grown for **business** purposes.

4. **Fire Department Service Charge. We** will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed. We** will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a **loss insured**. This coverage also applies to the property for

up to 30 days while removed. **We** will also pay for reasonable expenses incurred by **you** for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

a. **We** will pay up to $1,000 for:

(1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, **we** will not pay for use by an **insured** or anyone else;

(2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

**We** will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. **We** will not pay for loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

(1) **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend claims or suits ends when the amount **we** pay for the loss equals **our** limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, **we** will provide a defense. This defense is at **our** expense by counsel of **our** choice.

(3) **We** have the option to defend at **our** expense an **insured** or an **insured's** bank

9

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. airborne volcanic shock waves;

    b. ash, dust, or particulate matter; or

    c. lava flow.

    *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

    All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

    a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

       (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

       (2) substantial structural impairment;

       (3) imminent or threatened collapse;

       (4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

       (5) a part of a *building structure* that is standing even if:

          (a) it has separated from another part of the *building structure*; or

          (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

    b. The collapse must be directly and immediately caused by one or more of the following:

       (1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

       (2) decay or deterioration of, or damage from animals, birds, or insects to:

          (a) a connector; or

          (b) a structural member of a *building structure*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each *loss* for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each *loss* for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

To find the limits on a given date:

1.  divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2.  multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

### COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

1.  **Fire or lightning.**

2.  **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure, causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft**, including self-propelled missiles and spacecraft.

6.  **Vehicles**, meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

    a.  This includes:

        (1) the impact of a vehicle;

        (2) an object propelled from the tire or body of a vehicle;

        (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

        (4) a vehicle door or trunk lid being closed on personal property.

    b.  This peril does not include loss:

        (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

        (2) caused by shifting of the load being carried in or on a vehicle; or

        (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7.  **Smoke**, meaning abrupt and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8.  **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9.  **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

    This peril does not include:

    a.  loss of a precious or semi-precious stone from its setting;

    b.  loss caused by theft:

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(1) committed by an **insured** or by any other person regularly residing on the **insured location**.  Property of a student who is an **insured** is covered while located at a residence away from the **residence premises**, if the theft is committed by a person who is not an **insured**;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a **residence premises** rented to others:

  (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the **residence premises** is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

  (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

  (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

  (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the **residence premises** of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there.  Property of a student who is an **insured** is covered while at a residence away from the **residence premises**;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.**  This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object.  Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

(1) freezing;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

(3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water, steam, or sewage that is:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless **you** have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. **We** will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises**. **We** will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building**

14

HW-2135

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

*structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

(1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

(2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(1) and is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling; and

(2) from a:

(a) heating, air conditioning, or automatic fire protective sprinkler system;

(b) household appliance; or

(c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

**We** also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

(1) Contaminants and pollutants include but are not limited to any:

(a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

(b) contaminants or pollutants resulting from any natural resource extraction activities; or

(c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release**.

(2) **We** also will not pay for:

(a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;



©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

   (1) This includes:

      (a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

      (b) costs to remove animals, birds, or insects from the covered property; and

      (c) costs to prevent the animals, birds, or insects from returning to the property;

   (2) However, **we** will pay for:

      (a) losses caused by wild bears or deer; and

      (b) the breakage of glass or safety glazing material that is a part of a **building structure**, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, **we** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. **We** will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. **We** will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the **residence premises**, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building structure** or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

   (1) earthquake;

   (2) landslide, mudslide, or mudflow;

   (3) sinkhole or subsidence;

   (4) movement resulting from:

      (a) improper compaction;

      (b) site selection;

      (c) natural resource extraction activities; or

      (d) excavation;

   (5) erosion;

   (6) pressure by surface or subsurface earth or fill; or

   (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

   However, **we** will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a **loss insured**.

c. **Water**, meaning:

   (1) flood;

   (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3) waves (including tidal wave, tsunami, and seiche);

   (4) tides or tidal water;

   (5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

(7) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure**, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, **we** will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a **loss insured**.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, **we** will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a **loss insured**.

g. **Fungus**, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair, or replacement by **fungus**;

(2) any remediation of **fungus**, including the cost to:

(a) remove the **fungus** from covered property or to repair, restore, or replace that property; or

(b) tear out and replace any part of the **building structure** or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of **fungus**, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

h. **Intentional Losses.** If any **insured** intentionally causes or procures a loss to property covered under this policy, **we** will not pay any **insured** for this loss. This applies regardless of whether the **insured** is charged with or convicted of a crime.

This does not apply to an **insured** who did not participate in, cooperate in, or contribute to causing or procuring the loss.

3. **We** will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, **we** will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

b. defect, weakness, inadequacy, fault, or un-
soundness in:

(1) planning, zoning, development, surveying,
or siting;

(2) design, specifications, workmanship, repair,
construction, renovation, remodeling, grad-
ing, or compaction;

(3) materials used in repair, construction, renova-
tion, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or im-
provements of any kind) whether on or off the
**residence premises**; or

c. weather conditions.

However, **we** will pay for any resulting loss from items
3.a., 3.b., and 3.c. unless the resulting loss is itself a
Loss Not Insured as described in this Section.

# SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the **Dec-
larations** apply. **We** will settle covered property losses
according to the following. However, the valuation of any
covered property losses does not include, and **we** will not
pay, any amount for **diminution in value**.

## COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Similar
Construction.**

a. **We** will pay the cost to repair or replace with sim-
ilar construction and for the same use on the
premises shown in the **Declarations**, the dam-
aged part of the property covered under **SEC-
TION I – PROPERTY COVERAGES,
COVERAGE A – DWELLING**, except for wood
fences, subject to the following:

(1) until actual repair or replacement is com-
pleted, **we** will pay only the **actual cash
value** of the damaged part of the property,
up to the applicable limit of liability shown
in the **Declarations**, not to exceed the cost
to repair or replace the damaged part of the
property;

(2) when the repair or replacement is actually
completed, **we** will pay the covered addi-
tional amount **you** actually and necessarily
spend to repair or replace the damaged
part of the property, or an amount up to the
applicable limit of liability shown in the **Dec-
larations**, whichever is less;

(3) to receive any additional payments on a re-
placement cost basis, **you** must complete
the actual repair or replacement of the
damaged part of the property within two

years after the date of loss, and notify **us**
within 30 days after the work has been
completed; and

(4) **we** will not pay for increased costs resulting
from enforcement of any ordinance or law
regulating the construction, repair, or demo-
lition of a **building structure** or other struc-
ture, except as provided under **OPTIONAL
POLICY PROVISIONS, Option OL –
Building Ordinance or Law.**

b. Wood Fences: **We** will pay the **actual cash
value** for loss or damage to wood fences, not to
exceed the limit of liability shown in the **Decla-
rations** for **COVERAGE A – Other Structures**.

2. **A2 – Replacement Cost Loss Settlement – Com-
mon Construction.**

a. **We** will pay the cost to repair or replace with
common construction and for the same use on
the premises shown in the **Declarations**, the
damaged part of the property covered under
**SECTION I – PROPERTY COVERAGES, COV-
ERAGE A – DWELLING**, except for wood
fences, subject to the following:

(1) **we** will pay only for repair or replacement
of the damaged part of the property with
common construction techniques and ma-
terials commonly used by the building
trades in standard new construction. **We**
will not pay the cost to repair or replace ob-
solete, antique, or custom construction with
like kind and quality;



18

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

(2) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

b. Wood Fences. *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for COVERAGE A – Other Structures.

COVERAGE B – PERSONAL PROPERTY

1. B1 – Limited Replacement Cost Loss Settlement.

a. *We* will pay the cost to repair or replace property covered under SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. B2 – Depreciated Loss Settlement.

a. *We* will pay the *actual cash value* for property covered under SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY, except for property listed in item b. below.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
HW-2135

(3)   property not useful for its intended purpose.

However, **we** will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1)   **our** cost to replace at the time of loss;

(2)   the full cost of repair;

(3)   any special limit of liability described in this policy; or

(4)   any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable:

   a.  to the **insured** for an amount greater than the **insured's** interest; or

   b.  for more than the applicable limit of liability.

2.  **Your Duties After Loss.** After a loss to which this insurance may apply, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:

   a.  give immediate notice to **us** or **our** agent and also notify:

      (1)   the police if the loss is caused by theft, vandalism, or any other criminal act; and

      (2)   the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b.  protect the property from further damage or loss and also:

      (1)   make reasonable and necessary temporary repairs required to protect the property; and

      (2)   keep an accurate record of repair expenses;

   c.  prepare an inventory of damaged or stolen personal property:

      (1)   showing in detail the quantity, description, age, replacement cost, and amount of loss; and

      (2)   attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

   d.  as often as **we** reasonably require:

      (1)   exhibit the damaged property;

      (2)   provide **us** with any requested records and documents and allow **us** to make copies;

      (3)   while not in the presence of any other **insured**:

         (a)  give statements; and

         (b)  submit to examinations under oath; and

      (4)   produce employees, members of the **insured's** household, or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e.  submit to **us**, within 60 days after the loss, **your** signed, sworn proof of loss that sets forth, to the best of **your** knowledge and belief:

      (1)   the time and cause of loss;

      (2)   interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3)   other insurance that may cover the loss;

      (4)   changes in title or occupancy of the property during the term of this policy;

      (5)   specifications of any damaged structure and detailed estimates for repair of the damage;

      (6)   an inventory of damaged or stolen personal property described in 2.c.;

      (7)   receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8)   evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3.  **Loss to a Pair or Set.** In case of loss to a pair or set, **we** may choose to:

   a.  repair or replace any part to restore the pair or set to its value before the loss; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the ***residence premises*** is located to select an umpire;

(2) the party requesting the selection described in item c.(1) must provide the other party:

(a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b) a copy of the written application; and

(3) a written report of agreement, as required in item b., signed by any two appraisers or appraiser and umpire, will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*. In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of ***property damage*** in dispute;

(2) an adjuster or public adjuster with experience and training in estimating the type of ***property damage*** in dispute; or

(3) a contractor with experience and training in the construction, repair, and estimating of the type of ***property damage*** in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1) has performed services for either party with respect to the claim at issue in the appraisal; or

(2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

compensation of the umpire will be paid equally by **you** and **us**.

g.  **You** and **we** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h.  Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1)  any other questions of fact;

(2)  questions of law;

(3)  questions of coverage;

(4)  other contractual issues; or

(5)  to conduct appraisal on a class-wide basis.

i.  Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j.  A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5.  **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6.  **Suit Against Us.** No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

7.  **Our Option.** **We** may repair or replace any part of the property damaged or stolen with similar property. Any property **we** pay for or replace becomes **our** property.

8.  **Loss Payment.** **We** will adjust all losses with **you**. **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after **we** receive **your** proof of loss and:

a.  reach agreement with **you**;

b.  there is an entry of a final judgment; or

c.  there is a filing of an appraisal award with **us**.

9.  **Abandonment of Property.** **We** need not accept any property abandoned by an **insured**.

10.  **Mortgagee Clause.** The word "mortgagee" includes trustee.

a.  If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

b.  If **we** deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1)  notifies **us** of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2)  pays on demand any premium due under this policy, if **you** have not paid the premium; and

(3)  submits a signed, sworn statement of loss within 60 days after receiving notice from **us** of **your** failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c.  If **we** cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d.  If **we** pay the mortgagee for any loss and deny payment to **you**:

(1)  **we** are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2)  at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

22

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

This policy does not provide coverage for punitive or exemplary damages, or any attorney fees associated with these damages.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of an *insured*;

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

   d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

### SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

c. reasonable expenses an **insured** incurs at **our** request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding **us** in the investigation or defense of claims or suits;

d. interest the **insured** is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

(1) that part of the damages **we** pay; or

(2) the Coverage L limit; and

e. interest on the entire judgment that accrues after entry of the judgment and before **we** pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others.**

a. **We** will pay for **property damage** to property of others caused by the activities of an **insured**.

b. **We** will not pay more than the smallest of the following amounts:

(1) replacement cost at the time of loss;

(2) full cost of repair; or

(3) the limit of liability shown in the **Declarations** for Damage to Property of Others for any one **occurrence**.

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage** that:

(1) was a result of a:

(a) willful and malicious; or

(b) criminal;

act or omission of the **insured**;

(2) was intended by the **insured**; or

(3) would have been expected by the **insured** based on a reasonable person standard.

c. **We** will not pay for **property damage**:

(1) for a loss that is recoverable under Section I of this policy. **We** also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

(2) caused intentionally by an **insured** 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in **your** household;

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents, or controls, other than the **insured location**;

(c) a condition on the **insured location** or the ways immediately adjoining; or

(d) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

(5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same **property damage**.

## SECTION II – EXCLUSIONS

However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

(1) **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
HW-2135

(2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

(3) **insured** lacked the mental capacity to control his or her conduct;

(4) **insured** was not charged with or convicted of a criminal act or omission; or

(5) **insured** was impaired by drugs or alcohol;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

c. **bodily injury** or **property damage** arising out of the rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to the rental of the **residence premises**:

(a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

(b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(c) in part, as an office, school, studio, or private garage;

(2) when the **dwelling** on the **residence premises** is a two, three, or four family **dwelling** and **you** occupy one part and rent the other part to others;

(3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

(4) to activities that are ordinarily incident to non-**business** pursuits;

d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

f. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading, or unloading of:

(1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

(a) solely for recreational or hobby purposes;

(b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) **property damage** to any aircraft; or

(b) **bodily injury** or **property damage** resulting from interference with an aircraft carrying people regardless of whether the **bodily injury** or **property damage** is sustained by people or property on the aircraft or not;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

25

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion f.(3) does not apply while the watercraft is on the **residence premises**;

g. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or **motor vehicle** not covered under Section II of this policy;

h. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. **bodily injury** to any **insured** within the meaning of part 9.a., 9.b., or 9.c. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against any **insured** within the meaning of part 9.a., 9.b., or 9.c. of the definition of **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by any **insured** within the meaning of part 9.a., 9.b., or 9.c. of the definition of **insured**;

j. any claim made or suit brought against any **insured** by:

(1) any person in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** under 19 years of age;

k. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. **bodily injury** or **property damage** arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any **insured**, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

26

HW-2135

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

m. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to **bodily injury** or **property damage** arising out of smoke or fumes caused by fire or explosion.

**We** also do not cover:

(1) any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

(2) any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of contaminants or pollutants; or

(3) contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

n. **bodily injury** or **property damage** arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the **insured**;

o. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location.

**We** also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of **fungus**; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of **fungus**; or

p. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss.

2. Coverage L does not apply to:

a. liability:

(1) for **your** share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any **insured** through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in absence of the contract or agreement;

b. **property damage** to property owned by any **insured** at the time of the **occurrence**;

c. **property damage** to property rented to, used or occupied by, or in the care, custody, or control of any **insured** at the time of the **occurrence**.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

This exclusion does not apply to **property damage** caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors; or

f. **bodily injury** or **property damage** arising out of any real property any **insured** has sold or transferred. This includes but is not limited to **bodily injury** or **property damage** arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any **property damage** to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) **bodily injury** arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) **property damage** arising out of fire, smoke, or explosion.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers'-compensation, non-occupational disability, or occupational disease law;

c. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made, or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the **Declarations**. This is **our** limit for all medical expenses for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition does not increase **our** limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** must cooperate with **us** in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. **You** must cooperate with **us** in seeing that these duties are performed:

a. give written notice to **us** or **our** agent as soon as possible, which sets forth:

(1) the identity of this policy and the **insured**;

(2) reasonably available information on the time, place, and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

   (1) making settlement;

   (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

   (3) the conduct of suits and attend hearings and trials; and

   (4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES, Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

e. the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

   a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

**SECTION I AND SECTION II – CONDITIONS**

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M) or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

   No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* or *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

   a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. *We* may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

   b. *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
HW-2135

cancellation notice may be delivered to **you**, or mailed to **you** at **your** mailing address shown in the **Declarations**.  Proof of mailing will be sufficient proof of notice:

(1) **We** may cancel at any time by letting **you** know at least 10 days before the date cancellation takes effect if **we** cancel because:

   (a) **you** have not paid the premium. This condition applies whether the premium is payable to **us** or **our** agent or under any finance or credit plan;

   (b) there has been a material misrepresentation of fact which, if known to **us**, would have caused **us** not to issue this policy; or

   (c) evidence of arson exists.

(2) When this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason. **We** may cancel by notifying **you** at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us**, **we** may cancel if the risk has changed substantially since this policy was issued. **We** may cancel this policy by notifying **you** at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, **we** may cancel for any reason at anniversary. **We** may cancel by notifying **you** at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded.  The return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when this policy is returned to **us**.  In such cases, **we** will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.**  **We** may elect not to renew this policy. If **we** elect not to renew, a written notice will be delivered to **you**, or mailed to **you** at **your** mailing address shown in the **Declarations**.  The notice will be mailed or delivered at least 30 days before the expiration date of this policy.  Proof of mailing will be sufficient proof of notice.

7. **Assignment of Policy.**  Assignment of this policy will be void, and **we** will not recognize any such assignment, unless **we** give **our** written consent.

8. **Subrogation and Reimbursement.**

a. **Subrogation.**

(1) Applicable to SECTION I:

   If any **insured** to or for whom **we** make payment under this policy has rights to recover damages from another, those rights are transferred to **us** to the extent of **our** payment. That **insured** must do everything necessary to secure **our** rights and must do nothing after loss to impair them.  However before a loss, an **insured** may waive in writing all rights of recovery against any person.

(2) Applicable to SECTION II:

   If any **insured** has rights to recover all or part of any payment **we** have made under this policy, those rights are transferred to **us**.  An **insured** must do nothing after loss to impair them.  At **our** request, an **insured** will bring suit or transfer those rights to **us** and help **us** enforce them.

Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

b. **Reimbursement.**

If **we** make payment under this policy and any **insured** to or for whom **we** make payment recovers or has recovered from another person or organization, then the **insured** to or for whom **we** make payment must:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

    (1)  hold in trust for **us** the proceeds of any re-
covery; and

    (2)  reimburse **us** to the extent of **our** payment.

9.  **Death.**  If **you** die:

  a.  **we** insure the legal representative of the de-
ceased. This condition applies only with respect
to the premises and property of the deceased
covered under this policy at the time of death;

  b.  **insured** includes:

    (1)  any member of **your** household who is an
**insured** at the time of **your** death, but only
while a resident of the **residence prem-
ises**; and

    (2)  with respect to **your** property, the person
having proper temporary custody of the
property until appointment and qualification
of a legal representative.

10.  **Conformity to State Law.**  When a policy provision
is in conflict with the applicable law of the state in
which this policy is issued, the law of the state will
apply.

11.  **Premium.**

  a.  Unless as otherwise provided by an alternative
payment plan in effect with the **State Farm
Companies** with respect to the premium for this
policy, the premium is due and payable in full
on or before the first day of the policy period
shown in the most recently issued **Declara-
tions**.

  b.  The renewal premium for this policy will be
based upon the rates in effect, the coverages
carried, the applicable limits, deductibles, and
other elements that affect the premium applica-
ble at the time of renewal.

  c.  The premium for this policy may vary based
upon:

    (1)  the purchase of other products or services
from the **State Farm Companies**;

    (2)  the purchase of products or services from
an organization that has entered into an
agreement or contract with the **State Farm
Companies**. The **State Farm Companies**
do not warrant the merchantability, fitness,

or quality of any product or service offered
or provided by that organization; or

    (3)  an agreement concerning the insurance
provided by this policy, that the **State Farm
Companies** has with an organization of
which **you** are a member, employee, sub-
scriber, licensee, or franchisee.

  d.  **Your** purchase of this policy may allow:

    (1)  **you** to purchase or obtain certain coverages,
coverage options, coverage deductibles,
coverage limits or coverage terms on other
products from the **State Farm Companies**,
subject to their applicable eligibility rules; or

    (2)  the premium or price to vary for other:

      (a)  insurance;

      (b)  financial;

      (c)  vehicle;

      (d)  home;

      (e)  cell phone;

      (f)  electronic; or

      (g)  travel

products or services purchased by **you**.
Such other products or services must be
provided by the **State Farm Companies** or
by an organization that has entered into an
agreement or contract with the **State Farm
Companies**. The **State Farm Companies**
do not warrant the merchantability, fitness
or quality of any product or service offered
or provided by that organization.

12.  **Right to Inspect.**

  a.  **We** have the right but are not obligated to per-
form the following:

    (1)  make inspections and surveys of the **in-
sured location** at any time;

    (2)  provide **you** with reports on conditions **we**
find; or

    (3)  recommend changes.

Any inspections, surveys, reports, or recom-
mendations relate only to insurability and the
premiums to be charged.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

b. **We** do not:

(1) make safety inspections;

(2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

(3) warrant that conditions are safe or healthful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to **us** and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on **our** behalf.

13. **Joint and Individual Interests.** When there are two or more Named Insureds, each acts for all to cancel or change this policy.

14. **Change of Policy Address.** **We** may change the Named Insured's policy address as shown in the **Declarations** and in **our** records to the most recent address provided to **us** by:

a. **you**; or

b. the United States Postal Service.

15. **Electronic Delivery.** With **your** consent, **we** may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

16. **Our Rights Regarding Claim Information.**

a. **We** will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of **our** business functions.

b. Subject to 16.a. above, **we** will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information **we** have in **our** possession as a result of **our** processing, handling, or otherwise resolving claims submitted under this policy.

c. **We** may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of **our** business functions;

(2) to meet **our** reporting obligations to insurance regulators;

(3) to meet **our** reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

17. **Duties Regarding Claim Information.** An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim. **Our** rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

32

HW-2135

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

# OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B,** or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS** item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

   (1) computer programming, architectural, engineering, or industrial design services;

   (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

   (3) beauty or barber services or treatment;

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

   (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading, or unloading of:

      (a) draft or saddle animals, including vehicles for use with them; or

      (b) aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

      owned, operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

   (2) under **Coverage M** for **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option ID – Increased Dwelling Limit.** **We** will settle losses to damaged **building structures** covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the **Declarations**.

If the amount **you** actually and necessarily spend to repair or replace damaged **building structures** exceeds the applicable limit of liability shown in the **Declarations**, **we** will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the **dwelling**; or

2. 10% of the Option ID limit of liability to repair or replace **building structures** covered under **COVERAGE A – DWELLING**, Other Structures.

**Report Increased Values.** **You** must notify **us** within 90 days of the start of construction on any new **building structure** costing $5,000 or more; or any additions to or remodeling of **building structures** that increase their values by $5,000 or more. **You** must pay any additional premium due for the increased value. **We** will not pay more than the applicable limit of liability shown in the **Declarations** if **you** fail to notify **us** of the increased value within 90 days.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with **us**.

1. **COVERAGE A – DWELLING**, Other Structures, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY**, Special Limits of Liability on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** that are necessary or incidental to the use of the **residence premises** as an incidental **business**;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors, or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting, or computer programming; or

   d. any claim made or suit brought against any **insured** by:

      (1) any person in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**; or

      (2) any person who makes a claim because of **bodily injury** to any person in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** under 19 years of age.

**Option JF – Jewelry and Furs.**  Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY, Theft** apply to Option JF.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects.  However, **we** will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.**  The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy.  This is an additional amount of insurance and applies to **building structures** on the **residence premises**.

35

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

2. **Damaged Portions of *Building Structure*.** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will pay for the increased cost to repair or rebuild the physically damaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs.

3. **Undamaged Portions of Damaged *Building Structure*.** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs; and

   b. loss to the undamaged portion of the *building structure* caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the enforcement requires the demolition of portions of the same *building structure* not damaged by the same *loss insured*;

      (3) the ordinance or law regulates the construction or repair of the *building structure*, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

   c. legally required changes to the undamaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the requirement is in effect at the time the *loss insured* occurs; and

      (3) the legally required changes are made to the undamaged portions of specific *building structure* features, systems, or components that have been physically damaged by the *loss insured*.

   *We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

   a. *We* will not pay for any increased cost of construction:

      (1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

      (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

   b. *We* will not pay more under this coverage than the amount *you* actually spend:

      (1) for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

*We* will not pay for more than a ***building structure*** of the same height, floor area, and style on the same or similar premises as the ***building structure***, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the ***Declarations*** for this option.



©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

STATE FARM FIRE
AND CASUALTY COMPANY
G-4801-CI-0202304291-000 D1 #5 CLO*
ONE STATE FARM PLAZA
BLOOMINGTON, IL 61710

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 8286 3094 7070 00

2. Article Number *(Transfer from service label)*

9589 0710 5270 0858 6215 53

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

*Brian Gregory*
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

Brian Gregory

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt



USPS TRACKING #

9590 9402 8286 3004 7070 00

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

Lucas Co. Com. Pleas Court
Bernie Quilter, Clerk

FILED

DEC 04 2023

• Sender: Please print your name, address, and ZIP+4® in this box•

**Bernie Quilter**
**Lucas County Clerk of Courts**
**700 Adams St.**
**Toledo, Ohio  43604**



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JUDSON MITCHELL
G-4801-CI-0202304291-000 D2 #5 CLO*
ONE STATE FARM PLAZA
BLOOMINGTON, IL 61710

9590 9402 8286 3094 7070 17

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Brian Grege* ☐ Agent
☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
Brian Grege  NOV 17 2023

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ ...ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

9589 0710 5270 0858 6215 60

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt



USPS TRACKING #

9590 9402 8286 3054 7070 17

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

FILED

NOV 27 2023

Lucas Co. Com. Pleas
Bernie Quilter, Clerk Court

• Sender: Please print your name, address, and ZIP+4® in this box•

Bernie Quilter
Lucas County Clerk of Courts
700 Adams St.
Toledo, Ohio 43604

FILED
LUCAS COUNTY



2023 DEC 12 AM 9: 47

## IN THE LUCAS COUNTY COURT OF COMMON PLEAS

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS

Robert King
3456 E. Manhattan Blvd.
Toledo, Ohio 43611
Plaintiff and on behalf of those similarly
situated,

Vs.

State Farm Fire and Casualty Company
One State Farm Plaza
Bloomington, Ill. 61710

and

Judson Mitchell, claims specialist for State
Farm Fire and Casualty Company
One State Farm Plaza
Bloomington, Ill. 61710

Defendants.

Case No. CI 202304291

JUDGE NAVARRE

**AMENDED COMPLAINT AND CLASS
ACTION PURSUANT TO RULE 23 OF
THE OHIO RULES WITH JURY DEMAND
ENDORSED HEREON**

Michael D. Portnoy (0040213)
7024 Cloister Rd.
Toledo, Ohio 43617
PH: (419) 874-2775
FX: (419) 874-2777
e-mail:hawkport@aol.com
Attorney Robert King

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW COMES Robert King, both individually and on behalf of the purported

class, by and through counsel, and for their causes of action against the Defendants,

hereby state the following:

1.  At all relevant times, Robert King (hereinafter King) was a resident of

Lucas County, Ohio and was the owner of the house on 3456 Manhattan Blvd., Toledo,

Ohio 43611.(hereinafter house) on January 14, 2023. The other purported plaintiffs

reside in Lucas County, Ohio and throughout the United States.

2.  This action is brought by King as a class action on his own behalf



1

and on behalf of others similarly situated under the provisions of Rule 23 of the Ohio Rules of Civil Procedure for damages, declaratory relief, attorney's fees and costs.

3. The class represented by King in this action and of which they are members, consists of all those individuals who have and had property insurance contracts with Defendant State Farm Fire and Casualty Company (hereinafter State Farm) and whose insurance claims were adjusted in part by Judson Mitchell (hereinafter Mitchell) and were illegally denied insurance payments under their respective property insurance contracts with State Farm.

4. The exact number of the members of the class as described above is not known but is estimated that there are no less than 250 members of the class and the class is so numerous that individual members pursuing their action is impractical.

5. There are common questions of law and fact in this action that relate and effect the rights of each member of the class and the relief sought is common to the entire class namely whether the Defendants illegally breached the relevant property insurance contracts with King and the purported Plaintiffs.

6. The facts in this case will unequivocally establish the Defendants illegally violated the relevant property insurance contracts with King and purported Plaintiffs.

7. The claims of King who is a representative of this class are typical of the claims of the class and the claims of the members of the class including King, depend on the showing of the act or acts of the Defendants given rise to the right of the Plaintiffs to the relief being sought. There is no conflict as between King and any other member of the class in respect to the sanction or with respect to the claims for relief set forth in this Complaint.

8. This action is properly maintained as a class action in that the prosecution of

2

separate actions by individual members of the class identified above would create a risk of inconsistent or varying adjudications respecting individual members of the class and establishing compatible standards of conduct for the Defendants and those grounds generally apply to the class verified above, making a final injunctive relief or course finding declaratory relief appropriate with respect to the class as a whole and the questions of law and fact, the members of the class identified above will dominate over any questions effecting only individual members and King.

9. King is a representatives for the class and are able to and will fairly and adequately protect the interest of the class. The attorney for the class is experienced in the areas of pursuing class actions and will actively be responsible for Plaintiffs' case.

## COUNT ONE

10. King incorporates paragraphs one (1) through nine (9) as if fully written herein.

11. King and other class members similarly situated, entered into property insurance contracts with State Farm, an insurance company licensed to sell insurance contracts in Ohio and the United States, who provided property insurance company from 2022 through 2023 to King and purported plaintiffs. King had property insurance with State Farm on January 14, 2023. (A copy of King's relevant insurance policy pages and declarations page are attached hereto as Exhibit One (1)

12. On January 14, 2023, King's home suffered catastrophic damage when a driver of an automobile drove the automobile into King's house.

3

13. As a result of this accident, King contacted State Farm to make a property damage claim pursuant to his property insurance policy. State Farm conducted an investigation of property damage and concluded that the property damage claim to the house was $104,711.87.

14. Contrary to the plain language of the relevant contract between King and State Farm, State Farm failed to pay the allowable amount of the property damage payment to King. State Farm willfully breached the relevant contract with Plaintiff by refusing to pay him cost of living expenses, compensation for individual personal property damage and disregarded the actual costs for repairs to the house when calculating the damages.

15. As a result of the Defendants' willful and illegal breach of contract against King and the other similarly purported Plaintiffs who were illegally denied insurance payments per the relevant property insurance contracts with State Farm and Mitchell, King and the purported Plaintiffs have suffered damages in an amount exceeding $25,000.00

## COUNT TWO

16. King incorporates paragraphs one (1) through fifteen (15) as if fully rewritten herein.

17. Pursuant to R.C. 2923.32(A)(1), the Ohio civil RICO statute, "No person employed by, or associated with enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a *pattern of corrupt activity* or the collection of an unlawful debt." (Emphasis added.) The term "enterprise" is statutorily defined as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization,

4

association, or group of person associated in fact although not a legal entity." R.C. 2923.31 (C).

18.  A "pattern of corrupt activity" consists of "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).  The term "corrupt activity" is statutorily defined as "racketeering activity" under the Organized crime Control Act of 1970, 84 Stat. 941, Section 1961(A)(B), (1)(D), and (1) (E), as amended, Title 18, U.S. Code.  It also includes "conduct" that constitutes violation of specifically enumerated crimes.  R.C. 2923.31(I) (2).

19.  Ohio courts have held that in order to establish liability under R.C. 2923.32, a plaintiff must show "(1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3)  that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Patton v. Wilson,* 8th Dist. No. 82079, 2003-Ohio-3379, at ¶ 12, citing *Kondrat v. Morris* (1997), 118 Ohio App.3d 198, 209, 692 N.E.2d 246.  The elements must be pleaded with specificity, and sufficient evidence must be presented to overcome a motion for summary judgment.  Id. at 209, 692 N.E.2d 246.

20.  Ohio Revised Code Section 2913.02 states the following:

(A)  No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat;

(5) By intimidation;

21. 18 U.S.C. Sections 1961-1968, of the Federal Racketeering Influence and Corrupt Organization Act (RICO) is directed at "racketeering activity" defined in Section 1961 (1) to encompass, inter alia, acts "indictable" under specific federal criminal provisions, including mail fraud, provides in Section 1964 (c) for a private civil action to recover treble damages by any person injured in his/her business or property "by reason of a violation of section 1962." Section 1962(B)'s definition of "racketeering activity" includes (B) any act which is indictable under any of the following provisions for Title 18, United States Code, including section 1341 (18 U.S.C.S. Section 1341) relating to mail fraud.

22. Pursuant to **Sedema, S.P.R.L. v. Imrex Co. Inc., et al.,** 473 U.S. 479, (1985), 18. U.S.C.S. Sections 1961-1968 do not require that its occurrence must be established by criminal standards or that the consequences of a finding of liability in a private civil action are identical to the consequences of a criminal connection. **Sedima** also held that 18 U.S.C.S. Sections 1961-1968 impose no distinct "racketeering injury" requirement or civil liability to attach.

23. By using the mail to send notices to King and the Plaintiffs that Defendants would pay insurance payments to King and the purported Plaintiffs pursuant to the

6

terms and conditions of the relevant property insurance contracts, when these payments were not paid to King and the purported Plaintiffs per the relevant contracts, in violation of Federal and State law, Defendants made material misrepresentations concerning the relevant property insurance contracts.

24.    Defendants violated Ohio Revised Code Sections 2923.32(A)(1), 2923.31(C), (E), and (I)(2) and 18 U.S.C.S. Sections 1961-1968 by using the mail system to send notices to King and the Plaintiffs, alleging Defendants paid property insurance payments pursuant to the terms of the relevant property insurance contracts when these statements were false.

25.    Defendants engaged in this fraudulent enterprise through a pattern of racketeering activity by scheming to convince King and each Plaintiff that insurance payments were made pursuant to the relevant terms of the property insurance contracts when that was false. Defendant financially benefited from this pattern of fraud to King and each Plaintiff's financial detriment causing damages in an amount exceeding $25,000.00.

## COUNT THREE

26. King, individually and as a class action representative, incorporates paragraph one (1) through twenty-five (25) as if fully rewritten herein.

27.    King and each Plaintiff are consumers as defined by Ohio Revised Code Section 1345.01.

28.    Ohio Revised Code Section 1345.02 (A) states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."

7

29. As a result of the Defendants' material misrepresentations to the King and the other similarly situated Plaintiffs concerning the relevant property insurance contracts, Defendants violated Ohio Revised Code Sections 1345.02 and 1345.03 by acting arbitrarily, capriciously and fraudulently, causing damages to King and the Plaintiffs in an amount exceeding $25,000.00.

## COUNT FOUR

30. King incorporates paragraphs one (1) though twenty-nine (29) as if fully rewritten herein.

31. Defendants were required to act in good faith in processing and handling the property damage claim filed by the Plaintiffs.

32. Because the Defendants failed to exercise good faith in processing the claims of Plaintiffs and because Defendants' refusal to pay the full amount of insurance payments on the Plaintiffs' property damage is not predicated upon circumstances that furnish reasonable justification, pursuant to **Zoppo v. Homestead Insurance Co.,** 71 Ohio St. 3d. 552 (1994), Plaintiffs are entitled to punitive damages against Defendants, based upon the willful, wanton and malicious acts by Defendants to deny paying Plaintiffs' full insurance payments for their legitimate insurance claims.

**WHEREFORE,** King, for himself and for all the members of the class, requests that jury be empaneled to hear all triable issues in this case and respectfully requests this honorable Court for a Judgment against the Defendant as follows:

a. The right of each class member to recover all monies due to them from the Defendant, either individually or jointly and severally, under the Ohio and Federal RICO statutes, the Ohio Consumer Sales Practice Act and for

8

violating Fair Debt Collection Practices Act and **Zoppo v. Homestead Insurance, Co;**

b.     The Plaintiffs class be awarded damages instant to the equitable relief requested in the sum of an amount exceeding $25,000.00;

c.     This Court award the sum exceeding $25,000.00 on behalf of the class for punitive damages, statutory interest, and any other equitable relief this Court deems just based upon the illegal and willful acts by the Defendants; and

d.     Any and all damages this court deems just.

Respectfully submitted,

s/ Michael D. Portnoy
Attorney for Robert King

## CERTIFICATE OF SERVICE

A copy of this pleading was sent to Eric King, attorney for Defendants, on December 12, 2023, via fax.

s/Michael D. Portnoy

9



PLAINTIFF'S
EXHIBIT
C
PENGAD 800-631-6989

State Farm Fire and Casualty Company
*A Stock Company With Home Offices in Bloomington, Illinois*

Po Box 88049
Atlanta GA 30356-9901

**StateFarm**

AT1        H-16-2516-FB15  F  H  W
                                    3201
KING, ROBERT
3456 E MANHATTAN BLVD
TOLEDO OH  43611-1750

# DECLARATIONS

**AMENDED MAR 1 2022**

**AMOUNT DUE:**                    None

Payment is due by  BILLED THRU SFPP

**Policy Number:**    Insurance

**Policy Period:**  12 Months
**Effective Dates:** MAR 1 2022 to MAR 1 2023
The policy period begins and ends at 12:01 am standard
time at the residence premises.

## HOMEOWNERS POLICY

**Location of Residence Premises**
3456 E MANHATTAN BLVD
TOLEDO OH  43611-1750

**Your State Farm Agent**
DAVE BLY
2416 W LASKEY RD
TOLEDO OH  43613-3504

**Phone:** (419) 474-9672

| | |
|---|---|
| **Construction:** | Frame |
| **Year Built:** | 1892 |

**Roof Material:** Composition Shingle
**Roof Installation Year:**  2020

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules,
and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-
holder written notice in compliance with the policy provisions or as required by law.

## IMPORTANT MESSAGES
Your policy is amended MAR 1 2022
HOME/AUTO DISCOUNT DELETED

## PREMIUM
Endorsement Premium
INCREASE                                                                    $    658.00
*Your premium has already been adjusted by the following:*
Claim Record

3201  16

63  000079  H

**StateFarm**

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| KING, ROBERT | |

### SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 132,400 |
| Other Structures | $ 20,000 |
| B Personal Property | $ 99,300 |
| C Loss of Use | $ 39,720 |

| Additional Coverages | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

### SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 100,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

### INFLATION

Inflation Coverage Index: 322.1

### DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses   1 % | $ 1,324 |

### LOSS SETTLEMENT PROVISIONS

A2 Replacement Cost - Common Construction
B1 Limited Replacement Cost - Coverage B

MAY 03 2022

HD 2000

35-GH-Q919-1                                                     &StateFarm

FORMS, OPTIONS, AND ENDORSEMENTS
_____

HW-2135          Homeowners Policy
HO-2307.1        Amendatory Endorsement
HO-2444.2        Back-Up Of Sewer Or Drain -
                 5% of Coverage A/$ 6,620
Option OL        Ordinance/Law  10%/$  13,240

### Other limits and exclusions may apply - refer to your policy

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yaxell*                          *Michael F Tipson*
Secretary                                   President



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm® Homeowners Policy

**Ohio**
HW-2135

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

AGREEMENT ...................................................... 1

DEFINITIONS ..................................................... 1

DEDUCTIBLE ..................................................... 5

SECTION I – PROPERTY COVERAGES ..................... 5

    COVERAGE A – DWELLING............................... 5

        Dwelling ....................................................... 5

        Other Structures ......................................... 5

        Property Not Covered................................. 5

    COVERAGE B – PERSONAL PROPERTY ........... 5

        Property Covered ....................................... 5

        Special Limits of Liability ............................ 6

        Property Not Covered ................................. 6

    COVERAGE C – LOSS OF USE......................... 8

        Additional Living Expense .......................... 8

        Fair Rental Value........................................ 8

        Prohibited Use ............................................ 8

    SECTION I – ADDITIONAL COVERAGES ............ 8

        Debris Removal .......................................... 8

        Temporary Repairs..................................... 9

        Trees, Shrubs, and Landscaping ................ 9

        Fire Department Service Charge ................ 9

        Property Removed ...................................... 9

        Credit Card, Bank Fund Transfer Card,
        Forgery, and Counterfeit Money...................... 9

        Power Interruption .................................... 10

        Refrigerated Products ............................... 10

        Arson Reward............................................ 10

        Volcanic Action ......................................... 10

        Collapse ................................................... 10

        Locks and Remote Devices...................... 11

        Fuel Oil Release ....................................... 11

        Tear Out ................................................... 11

        Home Certification .................................... 11

INFLATION COVERAGE ...................................... 11

SECTION I – LOSSES INSURED ........................... 12

    COVERAGE A – DWELLING........................... 12

    COVERAGE B – PERSONAL PROPERTY ......... 12

SECTION I – LOSSES NOT INSURED .................... 14

SECTION I – LOSS SETTLEMENT ........................ 18

    COVERAGE A – DWELLING........................... 18

        A1 – Replacement Cost Loss Settlement –
        Similar Construction .................................. 18

        A2 – Replacement Cost Loss Settlement –
        Common Construction............................... 18

    COVERAGE B – PERSONAL PROPERTY ......... 19

        B1 – Limited Replacement Cost Loss
        Settlement ................................................ 19

        B2 – Depreciated Loss Settlement.................. 19

SECTION I – CONDITIONS................................... 20

    Insurable Interest and Limit of Liability ............ 20

    Your Duties After Loss .................................. 20

    Loss to a Pair or Set .................................... 20

    Appraisal...................................................... 21

    Other Insurance ........................................... 22

    Suit Against Us ............................................. 22

    Our Option .................................................... 22

    Loss Payment............................................... 22

    Abandonment of Property.............................. 22

    Mortgagee Clause ........................................ 22

    No Benefit to Bailee...................................... 23

    Recovered Property....................................... 23

    Assignment of Claim..................................... 23

SECTION II – LIABILITY COVERAGES .................... 23

    COVERAGE L – PERSONAL LIABILITY .............. 23

    COVERAGE M – MEDICAL PAYMENTS TO
    OTHERS ....................................................... 23

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

**SECTION II – ADDITIONAL COVERAGES**............23

Claim Expenses ...................................23

First Aid Expenses ..............................24

Damage to Property of Others .........................24

**SECTION II – EXCLUSIONS**..........................24

**SECTION II – CONDITIONS** .........................28

Limit of Liability ................................28

Severability of Insurance ..................................28

Duties After Loss ..............................28

Coverage M Requirements ..............................29

Payment of Claim – Coverage M or Damage to Property of Others ..........................29

Suit Against Us .......................................29

Bankruptcy of an Insured .............................29

Other Insurance – Coverage L .......................29

**SECTION I AND SECTION II – CONDITIONS**............29

Policy Period .......................................29

Concealment or Fraud..............................29

Liberalization Clause...............................29

Waiver or Change of Policy Provisions ...........29

Cancellation.......................................29

Nonrenewal ......................................30

Assignment of Policy ...............................30

Subrogation and Reimbursement....................30

Death .............................................31

Conformity to State Law .............................31

Premium ..........................................31

Right to Inspect.....................................31

Joint and Individual Interests ........................32

Change of Policy Address..........................32

Electronic Delivery...................................32

Our Rights Regarding Claim Information...........32

Duties Regarding Claim Information.................32

**OPTIONAL POLICY PROVISIONS**.........................33

Option AI – Additional Insured.......................33

Option BP – Business Property.......................33

Option BU – Business Pursuits .......................33

Option FA – Firearms .................................33

Option ID – Increased Dwelling Limit ..............34

Option IO – Incidental Business ....................34

Option JF – Jewelry and Furs.........................35

Option OL – Building Ordinance or Law..........35

Option SG – Silverware and Goldware Theft .................................................37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

# HOMEOWNERS POLICY
## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true;

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents;

5. any application for the insurance provided by this policy, including any warranty made by *you*, is a part of this policy; and

6. all statements in the application for insurance and in the *Declarations* are warranties.

This policy is void from its inception, if any warranty made by *you* is found to be false.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

A *building structure* includes:

a. the foundation supporting the structure, including:

    (1) slabs;

    (2) basement walls;

    (3) crawl space walls;

    (4) footings; and

    (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

4. *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age,

including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

e. ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

5. *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

6. *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7. *"dwelling"* means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

8. *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or by-products produced or released by fungi.

9. *"insured"* means:

a. *you*;

b. *your relatives*; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, *insured* also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by *you* or a person included in 9.b. or 9.c. above. A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 9.b. or 9.c. above.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

10. **"insured location"** means:

 a. the **residence premises**;

 b. the part of any other premises, other structures, and grounds used by **you** as a residence. This includes premises, structures, and grounds **you** acquire while this policy is in effect for **your** use as a residence;

 c. any premises used by **you** in connection with the premises included in 10.a. or 10.b. above.

 d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

 e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

 f. individual or family cemetery plots or burial vaults owned by an **insured**;

 g. any part of a premises occasionally rented to an **insured** for purposes other than **business**;

 h. vacant land owned by or rented to an **insured**. For the purposes of this definition, vacant land does not include:

 (1) farm land;

 (2) land containing a residence; or

 (3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the **insured**; or

 i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. **"loss insured"** means a loss as described under **SECTION I – LOSSES INSURED, COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

12. **"motor vehicle"**, when used in Section II of this policy, means:

 a. a land **motor vehicle** designed for travel on public roads or subject to motor vehicle registration;

 b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

 c. a "recreational or utility vehicle" while off an **insured location**. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

 d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

 e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

 f. any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not **motor vehicles**:

 a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

 b. a motorized land vehicle in storage on an **insured location** not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

 c. a motorized golf cart while used for golfing purposes;

 d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

 e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by

3

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13. **"occurrence"**, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

    a.    **bodily injury**; or

    b.    **property damage**;

during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

14. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

15. **"relative"** means any person related to **you** by:

    a.    blood;

    b.    adoption;

    c.    marriage; or

    d.    civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with **you**.

16. **"residence employee"** means an employee of an **insured**, or an employee leased to an **insured** by a labor leasing firm under an agreement between an **insured** and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for **you**. This does not include employees while performing duties in connection with the **business** of an **insured**.

17. **"residence premises"** means:

    a.    the one, two, three, or four family dwelling, other structures and grounds; or

    b.    that part of any other **building structure**;

where **you** reside and which is shown in the **Declarations**.

18. **"State Farm Companies"** means one or more of the following:

    a.    State Farm Mutual Automobile Insurance Company;

    b.    State Farm Fire and Casualty Company; and

    c.    subsidiaries or affiliates of either 18.a. or 18.b. above.

19. **"vacant dwelling"** means:

    a.    a dwelling:

        (1)    that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

        (2)    where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

    A dwelling will be considered occupied only if it is being used as a habitual place of residence with **your** knowledge and approval.

    b.    A dwelling that is under active construction will not be considered a **vacant dwelling**. A dwelling is under active construction when it is:

        (1)    being built as a new structure;

        (2)    being repaired due to damage otherwise covered by this policy; or

        (3)    undergoing substantial improvements, renovations, remodeling, or modifications;

    and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20. **"we"**, **"us"**, and **"our"** mean the Company shown in the **Declarations**.

21. **"you"** and **"your"** mean the person or persons shown as "Named Insured" in the **Declarations**. If a "Named Insured" shown in the **Declarations** is a human being, then **you** and **your** include:

    a.    a spouse of a "Named Insured";

4

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

b.  a party to a civil union with a "Named Insured";

c.  a domestic partner of a "Named Insured"; or

d.  a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1.  **Dwelling.** *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2.  **Other Structures.** *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

    *We* do not cover other structures:

    a.  not permanently attached to or otherwise forming a part of the realty;

    b.  used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

        (1)  duties of the *insured's* employment by another; and

        (2)  performed solely by the *insured*; or

    c.  rented or held for rental unless:

        (1)  rented to a person who is a tenant of the *dwelling*;

        (2)  rented for use solely as a private garage; or

        (3)  rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3.  **Property Not Covered.** *We* do not cover:

    a.  land, including the land necessary to support any Coverage A property. *We* also do not cover:

        (1)  any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

        (2)  the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

    b.  trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

    c.  systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1.  **Property Covered.**

    a.  *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

        (1)  owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

        (2)  owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2016
HW-2135

(3)   owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

b.   *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1)   in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2)   of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a.   $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b.   $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c.   $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

d.   $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e.   $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f.   $1,500 on trailers not used with watercraft;

g.   $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h.   $2,500 for loss by theft of firearms;

i.   $2,500 for loss by theft of silverware and goldware;

j.   $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k.   $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1)   designed for assisting persons with disabilities;

(2)   not designed for travel on public roads; and

(3)   not subject to motor vehicle registration; and

l.   $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2.   **Property Not Covered.** *We* do not cover:

a.   articles separately described and specifically insured in this or any other insurance;

6

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k.  However, **we** do cover those vehicles or machines:

   (1) that are:

      (a) not designed for travel on public roads; and

      (b) not subject to motor vehicle registration;

   (2) and that are:

      (a) used primarily to service the **insured location**; or

      (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system.  **We** also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts.  This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to **you**;

g. property regularly rented or held for rental to others by an **insured**. This does not apply to property of an **insured**:

   (1) in a sleeping room when the **dwelling** is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

   (2) on the **residence premises** if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the **residence premises**;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records.  This does not apply to any recording or storage media for electronic data processing. **We** will cover the cost of blank books, cards, or other blank material plus the cost of labor **you** incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy if

the damage had occurred to property on the *residence premises*;

b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c. the action of the civil authority is taken in response to:

   (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

   (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

   (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

*We* will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**.

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

    (a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

    (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

    a. trees, shrubs, live or artificial plants, and lawns;

    b. artificial grass; and

    c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning**, **Explosion**, **Riot or civil commotion**, **Aircraft**, **Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

    a. *We* will pay up to $1,000 for:

        (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

        (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

        (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

    No deductible applies to this coverage.

    *We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

    b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

    c. Defense:

        (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

        (2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

        (3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. airborne volcanic shock waves;

    b. ash, dust, or particulate matter; or

    c. lava flow.

    *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

    All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

    a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

       (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

       (2) substantial structural impairment;

       (3) imminent or threatened collapse;

       (4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

       (5) a part of a *building structure* that is standing even if:

           (a) it has separated from another part of the *building structure*; or

           (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

    b. The collapse must be directly and immediately caused by one or more of the following:

       (1) perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

       (2) decay or deterioration of, or damage from animals, birds, or insects to:

           (a) a connector; or

           (b) a structural member of a *building structure*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I – LOSSES INSURED

## COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

## COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

    a. This includes:

        (1) the impact of a vehicle;

        (2) an object propelled from the tire or body of a vehicle;

        (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

        (4) a vehicle door or trunk lid being closed on personal property.

    b. This peril does not include loss:

        (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

        (2) caused by shifting of the load being carried in or on a vehicle; or

        (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke,** meaning abrupt and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

    This peril does not include:

    a. loss of a precious or semi-precious stone from its setting;

    b. loss caused by theft:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

(c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

(1) freezing;

(2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

(3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water, steam, or sewage that is:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

## SECTION I – LOSSES NOT INSURED

1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a

This peril does not include:

a. loss to a portable hot tub or portable spa unless *you* have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless *you* have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. *We* will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises**. *We* will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if *you* have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, *you* must use reasonable care to continue the water supply and maintain heat in the **building**

14

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

*structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

    (1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

    (2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

    (1) and is:

        (a) continuous;

        (b) repeating;

        (c) gradual;

        (d) intermittent;

        (e) slow; or

        (f) trickling; and

    (2) from a:

        (a) heating, air conditioning, or automatic fire protective sprinkler system;

        (b) household appliance; or

        (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

    (1) Contaminants and pollutants include but are not limited to any:

        (a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

        (b) contaminants or pollutants resulting from any natural resource extraction activities; or

        (c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release.**

    (2) *We* also will not pay for:

        (a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

        (b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

        (c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l. all animals, birds, or insects.

   (1) This includes:

      (a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

      (b) costs to remove animals, birds, or insects from the covered property; and

      (c) costs to prevent the animals, birds, or insects from returning to the property;

   (2) However, *we* will pay for:

      (a) losses caused by wild bears or deer; and

      (b) the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

m. pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2. *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

   (1) earthquake;

   (2) landslide, mudslide, or mudflow;

   (3) sinkhole or subsidence;

   (4) movement resulting from:

      (a) improper compaction;

      (b) site selection;

      (c) natural resource extraction activities; or

      (d) excavation;

   (5) erosion;

   (6) pressure by surface or subsurface earth or fill; or

   (7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action.**

However, *we* will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a *loss insured*.

c. **Water**, meaning:

   (1) flood;

   (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3) waves (including tidal wave, tsunami, and seiche);

   (4) tides or tidal water;

   (5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(7) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure**, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, **we** will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a **loss insured**.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, **we** will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a **loss insured**.

g. **Fungus**, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair, or replacement, by **fungus**;

(2) any remediation of **fungus**, including the cost to:

(a) remove the **fungus** from covered property or to repair, restore, or replace that property; or

(b) tear out and replace any part of the **building structure** or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of **fungus**, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

h. **Intentional Losses.** If any **insured** intentionally causes or procures a loss to property covered under this policy, **we** will not pay any **insured** for this loss. This applies regardless of whether the **insured** is charged with or convicted of a crime.

This does not apply to an **insured** who did not participate in, cooperate in, or contribute to causing or procuring the loss.

3. **We** will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, **we** will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, **we** will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the **Declarations** apply. **We** will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and **we** will not pay, any amount for **diminution in value**.

### COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

   a. **We** will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, **we** will pay only the **actual cash value** of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of property;

      (2) when the repair or replacement is actually completed, **we** will pay the covered additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, **you** must complete the actual repair or replacement of the damaged part of the property within two

years after the date of loss, and notify **us** within 30 days after the work has been completed; and

      (4) **we** will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a **building structure** or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

   b. Wood Fences: **We** will pay the **actual cash value** for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for **COVERAGE A – Other Structures**.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

   a. **We** will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

      (1) **we** will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. **We** will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

18

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

(2) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law**.

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures**.

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value*.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

a. *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

(3)  property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1)  *our* cost to replace at the time of loss;

(2)  the full cost of repair;

(3)  any special limit of liability described in this policy; or

(4)  any applicable Coverage B limit of liability.

# SECTION I – CONDITIONS

1.  **Insurable Interest and Limit of Liability.**  Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

    a.  to the *insured* for an amount greater than the *insured's* interest; or

    b.  for more than the applicable limit of liability.

2.  **Your Duties After Loss.**  After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

    a.  give immediate notice to *us* or *our* agent and also notify:

        (1)  the police if the loss is caused by theft, vandalism, or any other criminal act; and

        (2)  the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b.  protect the property from further damage or loss and also:

        (1)  make reasonable and necessary temporary repairs required to protect the property; and

        (2)  keep an accurate record of repair expenses;

    c.  prepare an inventory of damaged or stolen personal property:

        (1)  showing in detail the quantity, description, age, replacement cost, and amount of loss; and

        (2)  attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d.  as often as *we* reasonably require:

        (1)  exhibit the damaged property;

        (2)  provide *us* with any requested records and documents and allow *us* to make copies;

        (3)  while not in the presence of any other *insured*:

            (a)  give statements; and

            (b)  submit to examinations under oath; and

        (4)  produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

    e.  submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

        (1)  the time and cause of loss;

        (2)  interest of the *insured* and all others in the property involved and all encumbrances on the property;

        (3)  other insurance that may cover the loss;

        (4)  changes in title or occupancy of the property during the term of this policy;

        (5)  specifications of any damaged structure and detailed estimates for repair of the damage;

        (6)  an inventory of damaged or stolen personal property described in 2.c.;

        (7)  receipts for additional living expenses incurred and records supporting the fair rental value loss; and

        (8)  evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3.  **Loss to a Pair or Set.**  In case of loss to a pair or set, *we* may choose to:

    a.  repair or replace any part to restore the pair or set to its value before the loss; or

20

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

(2) the party requesting the selection described in item c.(1) must provide the other party:

(a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

(b) a copy of the written application; and

(3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of *property damage* in dispute;

(2) an adjuster or public adjuster with experience and training in estimating the type of *property damage* in dispute; or

(3) a contractor with experience and training in the construction, repair, and estimating of the type of *property damage* in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1) has performed services for either party with respect to the claim at issue in the appraisal; or

(2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

compensation of the umpire will be paid equally by *you* and *us*.

g. *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1) any other questions of fact;

(2) questions of law;

(3) questions of coverage;

(4) other contractual issues; or

(5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only *our* share of the loss. *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

7. **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property *we* pay for or replace becomes *our* property.

8. **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after *we* receive *your* proof of loss and:

a. reach agreement with *you*;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with *us*.

9. **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

a. If a mortgage is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and *you*, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

b. If *we* deny *your* claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d. If *we* pay the mortgagee for any loss and deny payment to *you*:

(1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

22

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

# SECTION II – LIABILITY COVERAGES

## COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

This policy does not provide coverage for punitive or exemplary damages, or any attorney fees associated with these damages.

## COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of an *insured*;

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

   d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

## SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

(1) that part of the damages *we* pay; or

(2) the Coverage L limit; and

e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury* covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

b. *We* will not pay more than the smallest of the following amounts:

(1) replacement cost at the time of loss;

(2) full cost of repair; or

(3) the limit of liability shown in the *Declarations* for *Damage to Property of Others* for any one *occurrence*.

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. *bodily injury* or *property damage* that:

(1) was a result of a:

(a) willful and malicious; or

(b) criminal;

act or omission of the *insured*;

(2) was intended by the *insured*; or

(3) would have been expected by the *insured* based on a reasonable person standard.

c. *We* will not pay for *property damage*:

(1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

(2) caused intentionally by an *insured* 13 years of age or older;

(3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

(4) arising out of:

(a) *business* pursuits;

(b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

(c) a condition on the *insured location* or the ways immediately adjoining; or

(d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

(5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

(1) *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

(2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

(3) **insured** lacked the mental capacity to control his or her conduct;

(4) **insured** was not charged with or convicted of a criminal act or omission; or

(5) **insured** was impaired by drugs or alcohol;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

c. **bodily injury** or **property damage** arising out of the rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to the rental of the **residence premises**:

(a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

(b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(c) in part, as an office, school, studio, or private garage;

(2) when the **dwelling** on the **residence premises** is a two, three, or four family **dwelling** and **you** occupy one part and rent the other part to others;

(3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

(4) to activities that are ordinarily incident to non-**business** pursuits;

d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to

any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

f. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading, or unloading of:

(1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

(a) solely for recreational or hobby purposes;

(b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) **property damage** to any aircraft; or

(b) **bodily injury** or **property damage** resulting from interference with an aircraft carrying people regardless of whether the **bodily injury** or **property damage** is sustained by people or property on the aircraft or not;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k. *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

m. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to *bodily injury* or *property damage* arising out of smoke or fumes caused by fire or explosion.

*We* also do not cover:

(1) any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

(2) any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of contaminants or pollutants; or

(3) contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

n. *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the *insured*;

o. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

p. *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b. *property damage* to property owned by any *insured* at the time of the *occurrence*;

c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d. *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers' compensation, non-occupational disability, or occupational disease law;

e. *bodily injury* or *property damage* for which an *insured* under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors; or

f. *bodily injury* or *property damage* arising out of any real property any *insured* has sold or transferred.  This includes but is not limited to *bodily injury* or *property damage* arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any *property damage* to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) *bodily injury* arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) *property damage* arising out of fire, smoke, or explosion.

3. Coverage M does not apply to *bodily injury*:

a. to a *residence employee* if it occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured*;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a *residence employee* of an *insured*, regularly residing on any part of the *insured location*; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the *Declarations*.  This is the limit for all damages from each *occurrence* for the policy period in which the *bodily injury* or *property damage* first occurs, regardless of the number of *insureds*, claims made, or persons injured.  No additional limits or coverage will be available for the *occurrence* under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the *Declarations*.  This is *our* limit for all medical expenses for *bodily injury* to one person as the result of one accident.

2. **Severability of Insurance.**  This insurance applies separately to each *insured*. This condition does not increase *our* limit of liability for any one *occurrence*.

3. **Duties After Loss.**  In case of an accident or *occurrence*, the *insured* must cooperate with *us* in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. *You* must cooperate with *us* in seeing that these duties are performed:

a. give written notice to *us* or *our* agent as soon as possible, which sets forth:

(1) the identity of this policy and the *insured*;

(2) reasonably available information on the time, place, and circumstances of the accident or *occurrence*; and

(3) names and addresses of any claimants and available witnesses;

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES, Damage to Property of Others,** exhibit the damaged property if within the *insured's* control; and

e. the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. *We* may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

b. *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. Proof of mailing will be sufficient proof of notice:

(1) *We* may cancel at any time by letting *you* know at least 10 days before the date cancellation takes effect if *we* cancel because:

   (a) *you* have not paid the premium. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan;

   (b) there has been a material misrepresentation of fact which, if known to *us*, would have caused *us* not to issue this policy; or

   (c) evidence of arson exists.

(2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel if the risk has changed substantially since this policy was issued. *We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*. In such cases, *we* will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

         If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

         If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

         Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

   b. **Reimbursement.**

      If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

(1) hold in trust for **us** the proceeds of any recovery; and

(2) reimburse **us** to the extent of **our** payment.

9. **Death.** If **you** die:

a. **we** insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of **your** household who is an **insured** at the time of **your** death, but only while a resident of the **residence premises**; and

(2) with respect to **your** property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations**.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the **State Farm Companies**;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness,

or quality of any product or service offered or provided by that organization; or

(3) an agreement concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which **you** are a member, employee, subscriber, licensee, or franchisee.

d. **Your** purchase of this policy may allow:

(1) **you** to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

(2) the premium or price to vary for other:

(a) insurance;

(b) financial;

(c) vehicle;

(d) home;

(e) cell phone;

(f) electronic; or

(g) travel

products or services purchased by **you**. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

12. **Right to Inspect.**

a. **We** have the right but are not obligated to perform the following:

(1) make inspections and surveys of the **insured location** at any time;

(2) provide **you** with reports on conditions **we** find; or

(3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

b. *We* do not:

    (1) make safety inspections;

    (2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

    (3) warrant that conditions are safe or healthful; or

    (4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

13. **Joint and Individual Interests.** When there are two or more Named Insureds, each acts for all to cancel or change this policy.

14. **Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the *Declarations* and in *our* records to the most recent address provided to *us* by:

a. *you*; or

b. the United States Postal Service.

15. **Electronic Delivery.** With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

16. **Our Rights Regarding Claim Information.**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to 16.a. above, *we* will not be restricted in or prohibited from:

    (1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

    (2) using any of the items described in item b.(1) above; or

    (3) retaining:

        (a) any of the items in item b.(1) above; or

        (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

    (1) to enable performance of *our* business functions;

    (2) to meet *our* reporting obligations to insurance regulators;

    (3) to meet *our* reporting obligations to insurance data consolidators;

    (4) to meet other obligations required by law; and

    (5) as otherwise permitted by law.

d. *Our* rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

    (1) authorization related to any claim submitted under this policy; or

    (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

17. **Duties Regarding Claim Information.** An *insured* or a legal representative acting on an *insured's* behalf must provide *us* with any requested authorizations related to the claim. *Our* rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

# OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the *Declarations* and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of *insured* is extended to include the person or organization shown in the *Declarations* as an Additional Insured or whose name is on file with *us*. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B,** or **Coverage C;** or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the *residence premises*. This coverage does not apply to *bodily injury* to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the *Declarations*.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the *Declarations* for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS,** item 1.b. is modified as follows:

1. Section II coverage applies to the *business* pursuits of an *insured* who is a:

    a. clerical office employee, salesperson, collector, messenger; or

    b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

    while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

    a. for *bodily injury* or *property damage* arising out of a *business* owned or financially controlled by the *insured* or by a partnership of which the *insured* is a partner or member;

    b. for *bodily injury* or *property damage* arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

        (1) computer programming, architectural, engineering, or industrial design services;

        (2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

        (3) beauty or barber services or treatment;

    c. for *bodily injury* to a fellow employee of the *insured* injured in the course of employment; or

    d. when the *insured* is a member of the faculty or teaching staff of a school or college:

        (1) for *bodily injury* or *property damage* arising out of the maintenance, use, loading, or unloading of:

            (a) draft or saddle animals, including vehicles for use with them; or

            (b) aircraft, *motor vehicles*, recreational *motor vehicles* or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

            owned, operated, or hired by or for the *insured* or employer of the *insured* or used by the *insured* for the purpose of instruction in the use thereof; or

        (2) under **Coverage M** for *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

   h. infidelity of an *insured's* employees or persons to whom the insured property may be entrusted or rented;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.

If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* exceeds the applicable limit of liability shown in the *Declarations*, *we* will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the *Declarations* to repair or replace the *dwelling*; or

2. 10% of the Option ID limit of liability to repair or replace *building structures* covered under **COVERAGE A – DWELLING, Other Structures**.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more, or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1. **COVERAGE A – DWELLING, Other Structures**, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property while off the *residence premises*. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a *business*.

3. Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

34

©. Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors, or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting, or computer programming; or

   d. any claim made or suit brought against any **insured** by:

      (1) any person in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**; or

      (2) any person who makes a claim because of **bodily injury** to any person in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY, Theft** apply to Option JF.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to **building structures** on the **residence premises**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

2. **Damaged Portions of *Building Structure*.** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will pay for the increased cost to repair or rebuild the physically damaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs.

3. **Undamaged Portions of Damaged *Building Structure*.** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will also pay for:

    a. the cost to demolish and clear the site of the undamaged portions of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs; and

    b. loss to the undamaged portion of the *building structure* caused by enforcement of any ordinance or law if:

        (1) the enforcement is directly caused by the same *loss insured*;

        (2) the enforcement requires the demolition of portions of the same *building structure* not damaged by the same *loss insured*;

        (3) the ordinance or law regulates the construction or repair of the *building structure*, or establishes zoning or land use requirements at the described premises; and

        (4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

    c. legally required changes to the undamaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law, if:

        (1) the enforcement is directly caused by the same *loss insured*;

        (2) the requirement is in effect at the time the *loss insured* occurs; and

        (3) the legally required changes are made to the undamaged portions of specific *building structure* features, systems, or components that have been physically damaged by the *loss insured*.

    *We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

    a. *We* will not pay for any increased cost of construction:

        (1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

        (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

        (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

    b. *We* will not pay more under this coverage than the amount *you* actually spend:

        (1) for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

        (2) to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135

*We* will not pay for more than a ***building structure*** of the same height, floor area, and style on the same or similar premises as the ***building structure***, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.



© Copyright, State Farm Mutual Automobile Insurance Company, 2016

HW-2135